UNIDAD NACIONAL DE TRABAJADORES DE LA SALUD, ETC., demandantes y recurridos, *v.* JOSÉ E. SOLER ZAPATA, SECRETARIO DE SALUD, ETC., demandados y recurrentes.

*Número:* RE-91-461          *Resuelto:* 16 de abril de 1993

154

*Anabelle Rodríguez, Procuradora General,* y *María Adaljisa Dávila, Procuradora General Auxiliar,* abogadas del Estado Libre Asociado de Puerto Rico, peticionario; *Raúl Santiago Meléndez,* del *Bufete Pérez Muñiz & Santiago Meléndez,* abogado de la Unión Nacional de Trabajadores de la Salud, recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Recurre ante nos el Secretario de Salud de una sentencia del Tribunal Superior que declaró inconstitucional de su faz y le impide poner en vigor una orden administrativa que prohíbe cualquier actividad dirigida a fomentar la participación de los empleados en asociaciones u organizaciones —así como la distribución de hojas sueltas y literatura— en las áreas de cuidado inmediato al paciente de las facilidades del Departamento de Salud, so pena de sufrir medidas disciplinarias severas que pueden incluir el despido permanente. Sostiene el recurrente que los hospitales no son foros públicos, por lo que la orden administrativa es válida. Por su parte, la parte recurrida argumenta que la naturaleza del foro es impertinente, toda vez que la referida orden adolece de vaguedad.

Por entender que, a la luz de la doctrina de foro público, el interés de los recurridos en solicitar o distribuir un material informativo en las áreas de cuidado inmediato al paciente, o durante sus horas laborables, no puede prevalecer contra el interés del Estado en preservar las facilidades hospitalarias para los fines que fueron creadas, revocamos.

## I

El 22 de octubre de 1990 el Secretario de Salud emitió una circular titulada "Prohibición de no solicitación" (sic). Anejo 3.(¹) Ésta se hizo llegar a los empleados de ese Departamento junto con el cheque correspondiente a la última quincena. En síntesis, la circular prohibía que durante horas de trabajo se realizara en las facilidades del Departamento de Salud cualquier actividad dirigida a fomentar la participación de los empleados en asociación u organización alguna. También prohibía en todo momento, incluso durante horas de almuerzo y de descanso, la distribución de hojas sueltas y de literatura en esas facilidades. Como penalidad por violar la prohibición, la Administración podría tomar "la medida que estime necesaria" (Anejo 3), inclusive el despido permanente.

El 28 de noviembre de 1990, la Unión Laboral de Enfermeras y Empleados de la Salud presentó una solicitud de *injunction* y sentencia declaratoria para impugnar la vali-

---

(¹) La referida orden dispone:

"No se permitirá la solicitación de clase alguna en las facilidades de la Institución durante horas de trabajo. Por solicitación se entiende toda actividad dirigida a fomentar la participación de empleados en cualquier tipo de asociaciones u organizaciones, hacer campaña, reuniones y/o discursos. La distribución de hojas sueltas y literatura está terminantemente prohibida en todo momento (incluyendo la hora de tomar almuerzo y períodos de descanso) en las facilidades de la Institución.

"Esta limitación incluye las áreas dedicadas al cuido de pacientes. Un área dedicada al uso de pacientes se define como las habitaciones de los pacientes o cualquier otro lugar donde estos reciben cualquier tipo de tratamiento o atención médica, incluyendo pero no limitado a, corredores adyacentes a las habitaciones de los pacientes o cualquier otro lugar donde éstos reciben cualquier tipo de tratamiento o atención médica, salones de recepción en los pisos de los pacientes, así como en aquellos otros pisos que son frecuentemente utilizados por los pacientes. Además, estará prohibida la solicitación y la distribución de literatura en el área de admisiones, recepción, sala de emergencia, escaleras, pasillos y otros.

"La Administración se reserva el derecho de aplicar esta Regla a cualquier área de surgir circunstancias especiales que afecten a los pacientes, o al cuido de éstos, por el tiempo que subsisten dichas circunstancias. La Administración podrá aplicar la medida que estime necesaria cuando entienda que un empleado a [sic] violado esta Regla. Una violación a esta Regla podría constituir justa causa, dependiendo de la circunstancia, para una medida disciplinaria severa incluyendo la separación de empleo y sueldo permanente." Memorando de 22 de octubre de 1990, Administración de Facilidades y Servicios de Salud, Departamento de Salud, Anejo 3.

dez de dicha orden.([2]) El 5 de diciembre de 1990, la Unión Nacional de Trabajadores de la Salud hizo lo propio.([3]) Alegaron que la Circular de 22 de octubre de 1990 violenta los derechos de libre expresión y asociación de los empleados públicos, adolece de amplitud excesiva y vaguedad, y les niega la igual protección de las leyes. Ambos recursos fueron consolidados.

Posteriormente, el 28 de diciembre de 1990, la Secretaria Interina de Salud emitió una "Orden aclaratoria sobre la prohibición de solicitación". Dicha circular provee lo siguiente:

Se proh[í]be la solicitación, por cualquier persona y en cualquier momento en las áreas de cuidado y servicio al paciente, según se definirán más adelante.

Se proh[í]be a los empleados solicitar durante sus horas de trabajo.

Por solicitar se entiende el que una persona ofrezca o reciba, fomente, distribuya, gestione, información o materiales relacionados con la participación y/o cooperación de empleados en actividades, organizaciones, negocios o asociaciones. También, que se distribuya, gestione, reciba información y materiales, excepto aquellos que son parte integral de las funciones inhe-

([2]) *Radamés Quiñones Aponte et al v. José Soler Zapata et al*, Civ. Núm. KPE-90-1948.

([3]) *Unión Nacional de Trabajadores de la Salud v. José Soler Zapata*, Civ. Núm. KPE-90-1995.

Tanto la Unión Laboral de Enfermeras y Empleados de la Salud (U.L.E.E.S.) como la Unión Nacional de Trabajadores de la Salud (U.N.T.S.) son organizaciones *bona fide* certificadas como tal por el Secretario del Trabajo y Recursos Humanos al amparo de la Ley Núm. 134 de 19 de julio de 1960 (3 L.P.R.A. secs. 702 *et seq.*). Tienen como finalidad promover el bienestar general de los empleados públicos, la eficiencia en la prestación de los servicios y la actitud liberal hacia la administración pública. 3 L.P.R.A. sec. 702(a). No obstante, el hecho de que por ley se les permita organizarse y conversar con sus patronos no implica que sus miembros tienen un derecho constitucionalmente protegido a organizarse y a exigir que sus patronos entren en negociaciones colectivas con ellas. Op. Sec. Just. Núm. 1983-13. La certificación de asociación *bona fide* no las convierte en uniones. 29 L.P.R.A. sec. 69(d); *A.A.A. v. Unión Empleados A.A.A.*, 105 D.P.R. 437, 458 (1976). Sólo los empleados de patronos privados, o de instrumentalidades del Gobierno que funcionen como negocios privados, tienen un derecho constitucional a organizarse y a negociar colectivamente con sus patronos, derecho a la huelga, a establecer piquetes y a llevar a cabo otras actividades concertadas legales. Art. II, Secs. 17 y 18, Const. E.L.A., L.P.R.A., Tomo 1. Ello no impide, sin embargo, que dichas asociaciones sí reclamen su libertad de expresión y asociación garantizada por la Constitución. Son precisamente estos derechos los que reclaman las asociaciones recurridas.

rentes del empleado del Departamento de Salud y/o AFASS. Por materiales se entiende cualquier objeto, ... manuscritos, ... hojas sueltas, ... etc.

Las áreas de cuidado y servicio al paciente se definen como las habitaciones de los pacientes o cualquier otro lugar donde éstos reciben cualquier tipo de tratamiento o atención médica, corredores adyacentes ... salas de recepción en los pisos de los pacientes, así como en los pisos que son frecuentemente utilizados por los pacientes. Anejo 5, págs. 1–2.

Además, la circular faculta al director de cada institución para designar otras áreas en que estará vedada o permitida la solicitación, haciendo constar las designaciones en un memorando que se publicará. Al designar las áreas, tomará en consideración que la solicitación no debe interrumpir los servicios a prestarse a los pacientes ni la tranquilidad que debe prevalecer en el área. Finalmente, la circular reitera que la Administración podrá tomar la medida que estime necesaria en casos de violación de las normas sobre solicitación, incluso el despido permanente.(⁴)

El tribunal de instancia celebró una conferencia sobre el *status* del caso. A preguntas del juez, la representación legal del Departamento de Salud admitió que no era la intención de esa entidad aplicar la prohibición de solicitación a actividades tales como el reclutamiento para planes médicos, solicitud de donaciones para causas cívicas o visitas a pacientes por grupos religiosos.(⁵) Oída la argumentación de las partes, el tribunal decretó mediante sentencia la nulidad de la prohibición de 22 de octubre de 1990 y su consecuente aclaración de 28 de diciembre de 1990. Expi-

---

(⁴) La circular no deja sin efecto el Memorando de 3 de agosto de 1987 sobre las normas y procedimientos para la atención de las peticiones de las Asociaciones *bona fide*. Dicho memorando provee, entre otras cosas, que las asociaciones podrán reunirse después de las 4:30 P.M. o sábados y domingos, y que sólo podrán asistir a esas reuniones aquellos empleados que estén en sus horas libres, salvo con permiso especial. También permite que, fuera de horas laborables, puedan celebrar sus conferencias en las facilidades de las instituciones del Departamento de Salud.

(⁵) Alegato de la Unión Nacional de Trabajadores de la Salud, pág. 6. En su comparecencia ante este Tribunal de 19 de febrero de 1992, el recurrente explicó que dicha admisión por parte de su representación legal fue errónea.

dió un interdicto permanente contra el Departamento de Salud para prohibir que se pusiera en vigor. Concluyó que tanto la prohibición de 22 de octubre de 1990, como la orden aclaratoria de 28 de diciembre de 1990, adolecían de amplitud excesiva por restringir de manera absoluta el tiempo y lugar de la expresión e incidir sobre su contenido. En vista de dicha conclusión, estimó innecesario discutir si, a la luz de la doctrina de foro público, el hospital es o no un foro público, semipúblico o no público.

En su recurso el Secretario de Salud señala que erró el foro de instancia al declarar inconstitucional la orden por amplitud excesiva sin antes determinar si los hospitales son o no foros públicos a la luz de la doctrina expuesta en *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983). Sostiene que ello es requisito de umbral antes de determinar cuál es el alcance de la facultad del Estado al intervenir con el ejercicio de la libertad de expresión en un foro en particular. Argumenta que los hospitales no son foros públicos, por lo que el Estado puede reglamentar el ejercicio de la libertad de expresión en éstos siempre que lo haga de manera razonable y no discriminatoria. Entiende, además, que la Orden de 22 de octubre de 1990, según modificada por la Orden de 28 de diciembre de 1990, reúne los requisitos de validez constitucional, tanto a la luz de la doctrina de foro público como a la luz de la doctrina de balance de intereses.

El Secretario de Salud aduce varios fines para justificar la prohibición. Ésta pretende asegurar, en los hospitales, el ambiente de tranquilidad indispensable para la pronta recuperación de los pacientes. Promueve que los corredores permanezcan despejados para hacer viables el libre tránsito de los pacientes. Pretende, además, asegurar que el personal rinda sus labores eficientemente, sin distracciones y sin que se afecten sus relaciones interpersonales por discusiones ajenas a sus deberes. Finalmente, la prohibición persigue eliminar el inconveniente de los desperdicios

de papel generados por la distribución de hojas sueltas y otro tipo de literatura.

Por su parte, la Unión Nacional de Trabajadores de la Salud sostiene que la prohibición de 22 de octubre de 1990, aún a la luz de la Orden aclaratoria de 28 de diciembre del mismo año, es inconstitucional. Señala que se presta a la implantación arbitraria y adolece de vaguedad, ya que una persona de inteligencia promedio no sabría con certeza qué se pretende prohibir. Alegan, además, que la prohibición se aplica de manera discriminatoria, en violación a la norma constitucional de la igual protección de las leyes. En vista de esos defectos, dicha Unión afirma que la orden es nula, por lo que es innecesario entrar a determinar si el hospital es o no un foro público. Expuesta la controversia, pasemos a examinar la doctrina aplicable.

## II

■    Primero, debemos determinar si las doctrinas de vaguedad y amplitud excesiva pueden utilizarse para analizar la validez de una reglamentación gubernamental del ejercicio de la libertad de expresión, sin que sea necesario tener antes en cuenta si el foro al cual le aplica dicha reglamentación es o no público. Las doctrinas de vaguedad y de amplitud excesiva fueron desarrolladas por el Tribunal Supremo federal para enfrentar controversias en las cuales esté implicada la libertad de expresión. Se utilizan para impugnar la constitucionalidad de una ley de su faz, y no meramente según aplicada a los hechos del caso particular. Como excepción a las normas de legitimación (*standing*), estas doctrinas permiten determinar si la ley afectaría los derechos de terceras personas que no se encuentren ante el tribunal.([6]) *Pueblo v. Hernández Colón*, 118 D.P.R. 891, 898

---

([6]) Cuando la ley no adolece de vaguedad o amplitud excesiva de su faz, aún puede utilizarse este análisis como parte del debido procedimiento de ley sustantivo al determinar si la ley es inconstitucional en su aplicación a los hechos particulares

esc. 5 (1987). El tribunal, además, considera si existen otros medios más precisos o menos onerosos que el Estado pudo haber empleado al reglamentar la expresión. R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1988, Vol. II, págs. 1319–1320.

A pesar de que tienen elementos en común, debemos tener cuidado de no confundirlas. Una reglamentación que interfiere con la libertad de expresión es vaga si una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que se pretende penalizar, y se presta a aplicación arbitraria y discriminatoria. *Velázquez Pagán v. A.M.A.*, 131 D.P.R. 568 (1992); *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 D.P.R. 229 (1988); *Vives Vázquez v. Tribunal Superior*, 101 D.P.R. 139, 144–146 (1973); *Pueblo v. Tribunal Superior*, 98 D.P.R. 750, 751–752 (1970).

Por otro lado, adolece de amplitud excesiva una reglamentación que aspire a prohibir o a castigar expresiones que no gozan de protección constitucional pero que, por razón de haber sido redactada o interpretada imprecisamente, tiene el efecto de proscribir comunicaciones constitucionalmente protegidas. *Velázquez Pagán v. A.M.A.*, supra; *Pueblo v. Hernández Colón*, supra; *Mari Bras v. Casañas*, 96 D.P.R. 15, 23–24 (1968). Tanto en casos de vaguedad como de amplitud excesiva, la ley se declara nula de su faz y no puede ser aplicada válidamente a nadie.

Ambas doctrinas presuponen que hay un ejercicio del derecho a la libre expresión que no podría ser legítimamente restringido por la reglamentación gubernamental. En *Pueblo v. Hernández Colón*, supra, pág. 899, expresamos que "[a]l considerar el planteamiento de amplitud excesiva ... hay que tener presente que si no están afectados derechos de libertad de expresión y asociación constitucio-

---

ante el tribunal. *Pueblo v. Hernández Colón*, 118 D.P.R. 891, 899 (1987).

nalmente protegidos, no procede examinar la ambigüedad de [una reglamentación]". También, en *Pacheco Fraticelli v. Cintrón Antonsanti, supra,* antes de pronunciarnos en cuanto a la vaguedad de la ordenanza en cuestión, determinamos que se trataba de un foro público donde el Gobierno sólo puede sujetar la expresión a limitaciones de tiempo, lugar y modo. Puesto que la ordenanza carecía de guías sobre tiempo, lugar y modo, resolvimos que adolecía de vaguedad.

Por lo tanto, en la medida en que el tipo de foro determine el alcance del poder gubernamental de reglamentar la expresión, es indispensable identificar la naturaleza del foro antes de decidir si la reglamentación adolece o no de vaguedad o amplitud excesiva. La reglamentación, que podría resultar impermisiblemente vaga o excesivamente amplia si se aplica en un foro a cierto tipo de expresión, podría ser válida si se implanta en otro lugar. Por lo tanto, tiene razón el Secretario de Salud cuando señala que el tribunal de instancia debió entrar a discutir si los hospitales son o no son foros públicos.

## III

Como la Constitución federal determina el ámbito mínimo de protección que debemos reconocer en Puerto Rico, *Bayrón Toro v. Serra,* 119 D.P.R. 605, 618 (1987), examinemos los parámetros bajo la Primera Enmienda en lo referente al derecho a expresarse libremente en la propiedad pública. Al amparo de dicha enmienda se ha desarrollado la doctrina del foro público, que parte de la premisa de que no hay un derecho absoluto a ejercer la libertad de expresión en la propiedad pública.(7) El derecho a tener acceso a la propiedad pública para ejercer la libertad de

___

(7) El mero hecho de que la gente pueda entrar y salir libremente no convierte automáticamente la propiedad pública en un foro público. *United States v. Grace,* 461 U.S. 171, 177–178 (1983).

palabra depende de las características de la propiedad en cuestión. *International Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992); *Cornelius v. NAACP Legal Defense & Ed. Fund*, 473 U.S. 788, 799 (1985); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, supra, pág. 44.

En *Perry Ed. Assn. v. Perry Local Educators' Assn.*, supra, el Tribunal Supremo federal identificó tres (3) tipos de propiedad pública. El primer grupo lo componen aquellos lugares que, por tradición, han sido dedicados a la reunión pacífica y al debate público, tales como las calles, aceras y parques. *Perry*, supra, pág. 45. A estos lugares se les denomina "foros públicos tradicionales". En ellos, el Gobierno no puede prohibir de manera absoluta el ejercicio de la libertad de palabra. Sólo podrá reglamentar el tiempo, lugar y modo de expresarse, siempre que la reglamentación sea neutral al contenido de la expresión, responda a un interés gubernamental significativo, limite la intervención a la mínima necesaria para alcanzar su objetivo (*narrowly tailored*) y deje abiertas alternativas para la expresión. Íd., pág. 46. Si la reglamentación establece clasificaciones o limitaciones por razón del contenido del mensaje, debe sobrepasar un escrutinio estricto. Es decir, debe responder a un interés gubernamental apremiante y debe limitar su interferencia a la mínima necesaria para alcanzar su objetivo.[8] *Burson v. Freeman*, 504 U.S. 191 (1992).

El segundo grupo lo componen los foros públicos por designación. Se compone de aquellas propiedades públicas que el Gobierno ha abierto a la actividad expresiva. Una vez abiertos, aplican en éstos las mismas limitaciones al poder gubernamental de reglamentar la expresión que se emplean en los foros públicos tradicionales. *Perry Ed. Assn. v. Perry Local Educators' Assn.*, supra, págs. 45–46.

---

[8] En *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989), el Tribunal Supremo federal aclaró que el requisito de que la reglamentación sea la mínima necesaria para alcanzar su objetivo (*narrowly tailored*) no implica que tenga que ser la menos limitativa o *least restrictive*.

Dentro de esta categoría, el Gobierno puede designar foros públicos limitados. Éstos se abren para propósitos específicos, tales como la discusión e intercambio de ideas por ciertos grupos o sobre ciertos temas. Por lo tanto, en esos casos, el derecho a expresarse se extendería sólo a otros grupos de carácter similar o a otros puntos de vista sobre el mismo tema. *Íd.*, pág. 48; *Cornelius v. NAACP Legal Defense & Ed. Fund*, supra, págs. 802 y 806. Véase, además, *City of Madison School District v. Wisconsin Employee Relations Commission*, 429 U.S. 167, 175–176 (1976). El Gobierno no puede crear estos foros por inacción, sino sólo deliberadamente. *Cornelius*, supra, pág. 802.

La tercera y última categoría de propiedades públicas la componen los foros no públicos. Ésta comprende aquellas propiedades públicas que no son ni foros públicos tradicionales ni foros públicos por designación. En éstas, la protección que ofrece la Primera Enmienda de la Constitución federal es menor. El Gobierno puede limitar la actividad expresiva a aquella que sea compatible con el objetivo para el cual fue creada esta propiedad pública. La reglamentación de la expresión será válida siempre que sea razonable, aunque no tiene que ser la única ni la más razonable (*International Soc'y for Krishna Conciousness, Inc. v. Lee*, supra; *Cornelius v. NAACP Legal Defense & Ed. Fund.*, supra, pág. 808), neutral en cuanto a puntos de vista (*Cornelius*, supra, pág. 806), y siempre que no sea parte de un esfuerzo por suprimir la expresión (*Perry Ed. Assn. v. Perry Local Educators' Assn.*, supra, pág. 46).

Luego de haber delineado los contornos mínimos que sienta la Constitución federal, pasemos a examinar las doctrinas que este Tribunal ha desarrollado en torno a la reglamentación gubernamental del derecho a expresarse libremente en la propiedad pública.

# IV

Nunca hemos confrontado directamente la interrogante de si hay un derecho mínimo a expresarse en la propiedad pública. No obstante, en el pasado hemos utilizado un análisis de balance de intereses al determinar la constitucionalidad de los límites impuestos por el Estado a la libertad de expresión. *Pueblo v. Santos Vega*, supra, pág. 821; *E.L.A. v. Hermandad de Empleados*, 104 D.P.R. 436, 445–447 (1975).[9] Como parte de ese análisis, hemos tomado en cuenta la naturaleza del foro en que se intenta reglamentar la expresión.

Coincidimos con la jurisprudencia constitucional federal en cuanto a que hay lugares tales como las calles, los parques y las plazas públicas, que tradicionalmente han constituido foros para la divulgación y el intercambio de ideas. Éstos son foros públicos por tradición en donde no se puede prohibir de manera absoluta la expresión ni se pueden establecer clasificaciones por razón del contenido del mensaje. *Pacheco Fraticelli v. Cintrón Antonsanti*, supra. Los estatutos que intentan limitar el disfrute de esos derechos en los foros públicos deben fundamentarse en un interés público apremiante, y su efecto y alcance no debe ser más amplio del necesario para lograr ese propósito. *Pueblo v. Hernández Colón*, supra. Deben, además, contener guías y normas neutrales sobre el tiempo, el lugar y la manera en que se podrá ejercer la libertad de palabra en dicho foro. *Pacheco Fraticelli v. Cintrón Antonsanti*, supra.

■ También hemos distinguido entre la propiedad pública con carácter de foro público y otros tipos de áreas.

---

[9] El balance de intereses requiere que sopesemos el alcance de la restricción contra la importancia del interés gubernamental que la anima. Debemos considerar, además, otros medios que pudiera utilizar el Estado para lograr su propósito del modo que menos lesione al derecho a expresarse, así como las vías alternas disponibles para ejercer ese derecho. El principio rector es que, a mayor limitación, mayor debe ser el interés estatal así como la lesión a ese interés para que pueda justificarse la limitación a la luz de la Constitución. *Rodríguez v. Srio. de Instrucción*, 109 D.P.R. 251, 256 (1979).

La protección que se brinda a la expresión en los foros públicos tradicionales no se extiende a toda la propiedad del Estado. En algunos casos, hay lugares que no son propios para ejercitar algunos modos de expresión. Las escuelas, los tribunales y los hospitales, por ejemplo, no se organizaron para que sirvieran de foro al intercambio comunitario de ideas. *Rodríguez v. Srio. de Instrucción*, 109 D.P.R. 251, 256 (1979). En esos lugares, el Estado conserva la facultad de preservar el ambiente que propenda mejor a la consecución de los fines para los cuales fueron creados. Aun así, el Estado no puede prohibir absolutamente el ejercicio de la libertad de expresión que sea compatible con la gestión del foro de que se trate. Íd., pág. 257.

Examinando el ordenamiento constitucional aplicable, procedamos a evaluar la constitucionalidad de la reglamentación que origina el caso de autos.

## V

La circular de 28 de diciembre de 1990 que enmendó sustancialmente la prohibición de 22 de octubre,[10] consta de dos (2) partes. Véase Orden Aclaratoria de 28 de diciembre de 1990, citada en Anejo 5, pág. 2. Por un lado, prohíbe absolutamente la solicitación en las áreas de cuidado y de servicio al paciente. Tales áreas se definen como las habitaciones y las áreas de tratamiento médico, así como los pasillos adyacentes, las salas de recepción en los pisos de pacientes y en aquellos lugares que éstos utilicen con frecuencia. Por otro lado, la orden prohíbe a los empleados solicitar durante sus horas de trabajo. "Solicitación" se define como el que una persona ofrezca, reciba, fomente, distribuya o gestione información o materiales relacionados

---

[10] Mediante Resolución de 18 de octubre de 1991, invitamos a las partes para que analizaran la constitucionalidad de la Orden Aclaratoria de 28 de diciembre de 1990 a la luz de la naturaleza del foro donde se invoca la reglamentación. Nuestro análisis parte de la premisa de que dicha orden aclaratoria enmendó sustancialmente la prohibición contenida en la Circular de 22 de octubre de 1990.

con la participación de empleados en cualquier actividad. También incluye la solicitación y la distribución no relacionadas a las funciones inherentes del empleado.

Como vemos, la definición incluye no sólo la expresión oral, sino la distribución de material informativo. Este tipo de actividad, denominada "solicitación" en la circular, es uno de los vehículos más efectivos de la comunicación. *International Soc'y for Krishna Conciousness, Inc. v. Lee,* supra; *Martin v. Struthers,* 319 U.S. 141, 146 (1943); *Schneider v. State,* 308 U.S. 147, 160 (1939). Incluye la distribución de hojas sueltas u otro tipo de literatura u objetos, así como la comunicación oral. Permite a las personas exponer y propagar sus ideas de manera rápida, efectiva y económica. En la medida en que la reglamentación de marras interfiere con ese tipo de actividad, lo hace también con el ejercicio de la expresión. *Mari Bras v. Casañas,* supra, pág. 22.

La circular pretende reglamentar la expresión en los hospitales que administre el Gobierno a través del Departamento de Salud y la Administración de Facilidades y Servicios de Salud. Demás está decir que los hospitales no son foros públicos tradicionales. Tampoco han sido designados foros públicos por el Estado. Son, pues, foros no públicos en los cuales el Estado puede reglamentar la expresión de modo que no interfiera con los objetivos para los que fueron creados. Dicha reglamentación ha de ser razonable y no puede ser parte de un esfuerzo para suprimir la expresión. *Perry Ed. Assn. v. Perry Local Educators' Assn.,* supra, pág. 46.

La reglamentación administrativa que nos ocupa tiene varios objetivos legítimos.[11] El Estado puede y debe aspirar a preservar, en los hospitales que administra, el

---

[11] No nos expresamos en torno a la legitimidad de uno de los propósitos que persigue la reglamentación, a saber, el evitar que las hojas sueltas u otra literatura distribuida ensucie las facilidades hospitalarias.

ambiente más propicio para brindar un tratamiento de excelencia a los pacientes. Puede reglamentar de modo que se reduzcan a un mínimo las distracciones incompatibles con un servicio médico de calidad, un ambiente de sosiego y un área de trabajo segura y apropiada para el tratamiento médico. Ello implica que el Gobierno tiene la facultad de reglamentar la libertad de expresión de los empleados públicos que laboran en las facilidades hospitalarias que administra, de modo que se promueva la eficiencia del servicio público.[12] Véase *Velázquez Pagán v. A.M.A.*, supra.

Por eso, el Gobierno puede restringir las actividades expresivas que conllevan el descuidar o el omitir las funciones del cargo. A esos fines, puede exigirle a los empleados de la salud que dediquen su horario de trabajo a las labores que le han sido encomendadas. Después de todo, el ciudadano tiene derecho a que el empleado público —a quien confía el cuido de su salud y de su vida— dedique toda su atención a ofrecerle un servicio médico de calidad. Es un deber del Gobierno velar por que esto sea así. El Gobierno también puede prohibir las actividades expresivas en lugares en donde interrumpan el ambiente apropiado para el tratamiento médico o la tranquilidad de los pacientes. Tales áreas incluyen aquellas en donde se brinda tratamiento médico propiamente, pero también podrían incluir otros lugares, según la naturaleza de las facilidades y funciones de cada hospital. Véanse: *NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773 (1979); *Beth Israel Hospital v. NLRB*, 437 U.S. 483 (1978). Este tipo de reglamentación es razonable y tiene un fin legítimo, que es la preservación de la eficiencia e integridad del servicio médico hospitalario.

En vista de lo anterior, el Gobierno puede prohibir que los empleados soliciten oralmente durante sus horas de

---

[12] Los empleados públicos no renuncian a sus derechos por el mero hecho de entrar al servicio público. *Velázquez Pagán v. A.M.A.*, 131 D.P.R. 568 (1992).

trabajo.([13]) También puede prohibir que, aun en sus horas libres, soliciten oralmente en las áreas de cuidado inmediato al paciente, a saber, aquellas en que se provea tratamiento médico, las habitaciones de los pacientes, las salas de operaciones y los pasillos y las salas de recepción inmediatamente adyacentes. Véase, *e.g.*, NLRB v. Baptist Hospital, Inc., supra, pág. 778. Podrá extender la prohibición contra la solicitación oral en áreas que no sean propiamente las de cuidado inmediato al paciente si en la facilidad u hospital particular de que se trate la solicitación oral afecta el tratamiento médico o la tranquilidad de los pacientes. Íd., pág. 781 esc. 11.

El Estado también puede prohibir que sus empleados *distribuyan* material informativo durante sus horas de trabajo. Además, aun cuando el empleado se encuentre fuera de horas de trabajo, podrá prohibir dicha conducta en las áreas de cuidado inmediato al paciente o en las áreas de trabajo en el hospital.([14]) *Beth Israel Hospital v. N.L.R.B.*, supra, pág. 493 esc. 10. En estos lugares, el Estado tiene la facultad de prohibir la solicitación oral y la distribución de material informativo por parte de terceros (no empleados). Esto responde a que, como hemos explicado, el hospital no es un foro público y siempre quedan abiertas otras alternativas para la comunicación que no interrumpen el funcionamiento normal de los hospitales.([15])

El efecto neto de esta normativa es que ni durante horas

---

([13]) Por solicitación, nos referimos a invitar o requerir la participación o cooperación de los empleados o visitantes en cualquier actividad que no sea parte de las funciones inherentes del empleado. Por distribución, nos referimos a la repartición de hojas sueltas u otro tipo de material informativo no relacionado con las funciones del empleado.

No son horas de trabajo las horas de almuerzo y los recesos.

([14]) A modo de ejemplo, no son áreas de trabajo la cafetería, los salones dispuestos para recesos de los empleados ni los *locker rooms. NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 784 (1978).

([15]) Claro está, si el propio paciente requiere que otro le solicite o distribuya material informativo, y ello no sea contraindicado por razones médicas, el Estado no podría oponerse a que ese otro le visite a su habitación en el hospital.

de trabajo ni en las áreas de cuidado inmediato al paciente, hay un derecho constitucionalmente protegido a solicitar oralmente o a distribuir material informativo. Por ende, no son aplicables las doctrinas de amplitud excesiva y vaguedad de su faz a la definición de la conducta prohibida.([16]) En todas sus disposiciones sustantivas, la orden que nos ocupa cumple con el criterio de razonabilidad. .

Claro está, nuestra conclusión no impide que, en otro contexto, podamos determinar que existe un derecho constitucionalmente protegido a expresarse en las facilidades del Departamento de Salud. Sólo resolvemos que, en las horas y en las áreas cubiertas por la orden que nos ocupa, los empleados recurrentes no tienen derecho a incurrir en la conducta descrita en la orden administrativa.

Finalmente, cabe preguntarse si la penalidad dispuesta por esta orden para sancionar la conducta descrita es compatible con la Constitución. La orden considera la aplicación de la penalidad que el Administrador estime pertinente, incluyendo el despido permanente. Ello le da una gran discreción al Estado que pareciera viciar la orden de vaguedad.([17]) Sin embargo, en este caso no estamos ante una interferencia con el ejercicio de expresión constitucionalmente protegida. Por lo tanto, no cabe aplicar aquí el análisis de vaguedad de su faz. *Pueblo v. Hernández Colón,*

---

([16]) Esto nos impide pasar sobre la validez de la aplicabilidad a terceros que no están ante nos.

([17]) El Tribunal Supremo federal ha expresado que el análisis de vaguedad depende de la naturaleza de la disposición en cuestión. La reglamentación económica, así como aquella que conlleva penalidades de naturaleza civil, se examinan con mayor tolerancia. También, el análisis es menos estricto cuando no se afectan derechos de rango constitucional. *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 498–499 (1982). En esos casos, tampoco puede invocar la vaguedad de una reglamentación aquel cuya conducta está claramente cubierta por sus disposiciones. *Broadrick v. Oklahoma,* 413 U.S. 601, 608 (1973); *United States v. Wurzbach,* 280 U.S. 396, 399 (1930). Finalmente, cuando se trata de penalidades administrativas, el análisis debe tomar en cuenta los recursos administrativos disponibles para clarificar el alcance de la reglamentación, así como cualquier intrepretación restrictiva que haya ofrecido el Estado. *Parker v. Levy,* 417 U.S. 733, 752 (1974). Véase, además, *CSC v. Letter Carriers,* 413 U.S. 548 (1973) (la reglamentación es válida, en vista de que la agencia ha establecido procedimientos mediante los cuales un empleado en duda puede obtener clarificación en cuanto a su alcance).

supra, pág. 898 esc. 5. En todo caso, procedería el análisis de vaguedad en su aplicación, al amparo del debido procedimiento de ley. Íd., pág. 899. Véase, además, *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494-495, 495 esc. 7 y 497 (1982). No obstante, tampoco debemos pronunciarnos mediante esa vertiente. No estamos ante un intento concreto por parte del Departamento de Salud de aplicar a un empleado las penalidades de la orden administrativa. Desconocemos si se implantará de manera discriminatoria o de algún otro modo impermisible constitucionalmente. En ausencia de una controversia real y concreta, cualquier pronunciamiento en cuanto a la vaguedad de la penalidad es prematuro. *Rivera González v. Danny's Bakery*, 121 D.P.R. 304 (1988); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958).[18]

Por las razones que anteceden, *resolvemos que la orden aclaratoria de la prohibición de solicitación contenida en la Circular de 28 de diciembre de 1990 es constitucional.*

*Se revoca la sentencia recurrida.*

---

[18] En Puerto Rico, extendimos el análisis de vaguedad a las penalidades criminales. El concepto de vaguedad en la penalidad se relaciona íntimamente con el principio de tipicidad o legalidad de los estatutos criminales, que requiere que no sólo el delito sino la pena sean claramente definidas por ley. Art. 8 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3031; *In re Guzmán Géigel*, 113 D.P.R. 122, 130 (1982).

Por otro lado, es reconocido que el debido proceso de ley no tiene en el campo del derecho administrativo la rigidez que se le atribuye en la esfera penal. *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 202 (1987). Sin embargo, aún no hemos confrontado la aplicabilidad de las normas sobre vaguedad en la penalidad al ámbito administrativo. El análisis de debido procedimiento de ley en el ámbito de las relaciones obrero-patronales del Estado no se ha extendido hasta ahora para exigir que el Estado defina de antemano las medidas disciplinarias que aplicará. Prácticamente la totalidad de las decisiones judiciales sobre la garantía constitucional de los empleados públicos a un debido procedimiento de ley versan sobre dos (2) tipos de controversias: uno de índole sustantiva y otro de índole procesal. El primer tipo de controversia consiste en determinar si el Estado, como patrono, puede constitucionalmente interferir con un tipo particular de conducta del empleado. Véanse, *e.g.*: *Velázquez Pagán v. A.M.A.*, supra; *Bishop v. Wood*, 426 U.S. 341 (1976); *Parker v. Levy*, supra, pág. 752; *Arnett v. Kennedy*, 416 U.S. 134 (1974); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967). El segundo tipo de controversia requiere determinar cuáles son las salvaguardas procesales mínimas a las que tiene derecho un empleado público cuando se le aplica una medida disciplinaria que le priva de un interés propietario o de libertad. Véanse, *e.g.*: *Torres Solano v. P.R.T.C.*, 127 D.P.R. 499 (1990); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

El Juez Presidente Señor Andréu García se inhibió.