Hon. Manuel Rodríguez Orellana, Comisionado Electoral del Partido Independentista Puertorriqueño, demandante y recurrente, ahora recurrido, *v.* Comisión Estatal de Elecciones, Hon. Juan R. Melecio, Presidente, y otros, demandados y recurridos, ahora peticionarios.

*Número:* CE-93-680      *Resuelto:* 12 de noviembre de 1993

*David Rivé Rivera,* abogado del peticionario; *Carlos Gorrín Peralta,* abogado del recurrido.

## SENTENCIA

### (Regla 50)

La Comisión Estatal de Elecciones ( en adelante C.E.E.) recurre ante este Foro debido a una resolución y orden dictada el 10 de noviembre de 1993 por el Tribunal Superior, Sala de San Juan (Hon. Ángel G. Hermida, Juez).

Dicha resolución y orden dispone que no se considerará una violación a la orden del Presidente de la Comisión Estatal de Elecciones (en adelante C.E.E.) cuando cualquier miembro de una Junta de Inscripción Permanente o de una Comisión Local de Elecciones utilice como prenda la bandera de Puerto Rico o la bandera de Estados Unidos, o ambas banderas, siempre y cuando ninguna de éstas mida más de siete octavos (7/8) de pulgada de largo, y siempre y cuando tales banderas no estén unidas a otro símbolo.

La C.E.E. nos plantea como única cuestión que no procedía la expedición del auto de *injuction* preliminar en este caso.

Al amparo de la Regla 50 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. I-A, consideramos el recurso y resolvemos.

I

El 6 de noviembre de 1993 el Presidente de la C.E.E., Hon. Juan R. Melecio, aprobó una resolución para reglamentar el uso de los emblemas y símbolos que pueden ostentar los empleados de la C.E.E. que trabajan en la Junta de Inscripción Permanente (J.I.P.) y en las comisiones locales.

Dicha resolución en su parte dispositiva dispone que "[c]omo autoridad nominadora responsable de velar por el orden y buen comportamiento y la prestación de un servicio eficaz al público, le ordeno a todos los miembros de la J[.I.P.] y de Comisiones locales, a que efectivo inmediatamente, eliminen de su vestimenta cualquier símbolo, bandera, logo, mensaje u otro aditamento superfluo e innecesario, alusivo a partidos, fórmulas o tendencias políticas mientras se encuentran en el desempeño de sus funciones". *Certiorari*, pág. 2.

Expresó, además, que

[d]urante los últimos días ha llegado a mi conocimiento información en el sentido de que el uso de símbolos alusivos a partidos, a fórmulas plebiscitarias y banderas están siendo utilizados en la vestimenta de algunos empleados de las J[.I.P.]

Esta es una conducta que está afectando las relaciones interpersonales entre dichos miembros de las J.I.P., ocasiona desasosiego en el público presente y resulta simplemente lesiva a la imagen de la Comisión.

POR LO TANTO, como autoridad nominadora responsable de velar por el orden, el buen comportamiento y la prestación de un servicio eficaz al público, le ordeno a todos los miembros de las J[.I.P.] y de Comisiones Locales a que efectivo inmediatamente eliminen de su vestimenta cualquier símbolo, bandera, logo, mensaje o otro aditamento superfluo e innecesario alusivo a partidos, fórmulas o tendencias políticas partidistas mientras se encuentren en el desempeño de sus funciones.[1] Resolución, pág. 1.

El Comisionado Electoral del Partido Independentista Puertorriqueño (P.I.P.), Lcdo. Manuel Rodríguez Orellana, cuestionó dicha resolución en la C.E.E. y sostuvo que no acataría esta orden y que recurriría a los tribunales para cuestionar su legalidad.

El 8 de noviembre de 1993 el licenciado Rodríguez Orellana presentó una solicitud de revisión ante el Tribunal Superior, Sala de San Juan, para revisar la resolución de la C.E.E. Adujo que la bandera oficial de Puerto Rico le pertenece como símbolo a todos los puertorriqueños y que no es un símbolo oficial de ningún partido político ni de ninguna fórmula de *status* ante la consulta plebiscitaria que se celebraría el 14 de noviembre de 1993. Solicitó que se dejara sin efecto la resolución de la C.E.E., antes mencionada, y se ordenara al Presidente de este organismo y a los Comisionados del Partido Nuevo Progresista (P.N.P.) y del Partido Popular Democrático (P.P.D.) cesar y desistir de interferir con el derecho de libre expresión de cualquier empleado de la C.E.E. que desee portar, como parte de su vestimenta, la bandera de Puerto Rico ahora o en el futuro,

---

[1] Dicha resolución contó con la aprobación de los Comisionados Electorales del Partido Nuevo Progresista (P.N.P.) y del Partido Popular Democrático (P.P.D.).

y abstenerse de tomar represalias contra cualquier empleado de la C.E.E. que haya ejercido o en el futuro ejerza el derecho a portar la bandera de Puerto Rico como parte de su vestimenta.

Durante la tarde del lunes 8 de noviembre de 1993 el Lcdo. Carlos Gorrín, abogado de la parte recurrente, presentó una moción oral solicitando del Tribunal Superior que dictara una orden paralizando el efecto de la resolución de la C.E.E. Dicho foro celebró vistas evidenciarias sobre dicha moción el martes 9 y el miércoles 10 de noviembre de 1993. A la luz de la evidencia recibida en dichas vistas, y luego de considerar los argumentos ofrecidos por los abogados de ambas partes, al finalizar dichas vistas este Tribunal expresó en detalle en corte abierta lo que posteriormente reprodujo en la resolución y orden de la cual se recurre.

## II

La C.E.E. sostiene que el uso de la bandera de Puerto Rico en la vestimenta de cualquiera de sus empleados significa una identificación, bien con el P.I.P. o con la fórmula de la independencia. De la misma forma que el uso de la bandera de Estados Unidos sola implica una simpatía con la estadidad y el uso de ambas banderas con el Estado Libre Asociado de Puerto Rico. Es decir, que aquel empleado que ostente la bandera de Puerto Rico sola en su vestimenta, así como el que despliegue únicamente la de Estados Unidos, o el que use ambas unidas, están identificándose frente al público bien con un partido o con una fórmula específica de *status*.

Sostiene, además, la C.E.E., que la reglamentación adoptada concuerda con lo resuelto por este Foro con relación a los derechos políticos de los empleados públicos que pueden ser limitados en aras de un sistema administrativo imparcial y eficiente, *Herminia González v. Srio. del Tra-*

*bajo*, 107 D.P.R. 667 (1978); *Velázquez Pagán v. A.M.A.*, 131 D.P.R. 568 (1992), y otras limitaciones que se le imponen a los ciudadanos en el proceso electoral.

### III

El Presidente de la C.E.E., en el ejercicio de las facultades que le confiere la ley, y en aras de mantener la imparcialidad de dicho organismo en el proceso plebiscitario, la imagen de la C.E.E., evitar confrontaciones y perturbaciones, mantener el buen orden y marcha del proceso, y de evitar problemas, adoptó la resolución de la cual se recurre. Los propósitos —al así hacerlo— son preocupaciones legítimas de quien tiene la seria responsabilidad de mantener el orden y la integridad del proceso plebiscitario.

De hecho, la resolución y orden del Tribunal Superior todo lo que hace es interpretar la emitida por el Presidente de la C.E.E. y mantener en vigor las restricciones de tipo partidista.

Dispone así dicha resolución y orden del Tribunal:

... que no se considerará una violación a la orden del Presidente de la Comisión Estatal de Elecciones objeto del recurso el que cualquier miembro de una Junta de Inscripción Permanente o de una Comisión Local de Elecciones utilice como una prenda sobre su persona la bandera de Puerto Rico, o la bandera de Estados Unidos, o ambas banderas, siempre y cuando ninguna de éstas mida más de siete octavos (7/8) de pulgada de largo, y siempre y cuando tales banderas no sean unidas a otros símbolos. Por las razones que ya expresamos en detalle en corte abierta, el Tribunal entiende que lo anterior logra un adecuado balance entre los intereses en conflicto, y protege el derecho de las personas afectadas a usar esas banderas sin que ello cree un riesgo real de ocasionarle daño alguno a la Comisión, al proceso plebiscitario, o al interés público en general.

Se hace claro que la presente Orden no afecta en nada la prohibición de la utilización de otros símbolos que sean de tipo partidista, o que se identifiquen con algunas de las fórmulas de status, y que la presente Orden sólo autoriza el uso de las banderas que por disposición de ley son símbolos oficiales de Puerto Rico y de Estados Unidos respectivamente. Esta Orden tam-

poco afecta la norma de conducta número 43 del Manual de Normas de Conducta de la Comisión Estatal de Elecciones, adoptado en 1984, que prohíbe el que se adhiera sobre la tarjeta de identificación de la Comisión cualquier emblema o símbolo. Resolución y orden, págs. 1–2.

## IV

La bandera de Puerto Rico, la bandera de Estados Unidos, o ambas banderas son *por ley* símbolos oficiales de Puerto Rico y de Estados Unidos y *no* símbolos oficiales de ningún partido político o de alguna fórmula de *status* político. 1 L.P.R.A. secs. 31–33.

La bandera de Puerto Rico pertenece a todos los puertorriqueños. Es símbolo de lo que somos, de nuestra cultura, idioma y personalidad puertorriqueña. Representa el conjunto de nuestras costumbres, tradiciones y modo de vida. Es el símbolo que sintetiza el conjunto étnico al que pertenecemos.

La bandera de Estados Unidos representa igualmente el conjunto de valores, tradiciones, costumbres y modo de vida, y es el símbolo de la nación norteamericana. *Texas v. Johnson*, 491 U.S. 397 (1989).

Un examen cuidadoso de la interpretación hecha por el tribunal de instancia de la orden dictada por la C.E.E. refleja que ésta es cónsona con el balance adecuado entre los intereses en conflicto, sin que ello cree un riesgo real de ocasionarle daño alguno a la C.E.E. como al proceso plebiscitario, o al interés público en general.

Coincidimos con la apreciación del foro de instancia y confirmamos su resolución y *orden*.

*Notifíquese por correo y por la vía telefónica y publíquese.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió una opinión de conformidad.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión de conformidad del Juez Asociado Señor Negrón García.

Este recurso —de su faz— plantea una cuestión constitucional sustancial; a saber, el conflicto entre el derecho a la expresión simbólica durante un proceso eleccionario y el interés del Estado en preservar el desarrollo ordenado y el debido decoro que deben caracterizar a todo evento comicial en una sociedad democrática.

Salvaguardar eficazmente los derechos constitucionales de los independentistas que se desempeñen como funcionarios de las Juntas de Inscripción Permanente ( en adelante J.I.P.) y las Comisiones Locales de Elecciones, según reclamados por el Lcdo. Manuel Rodríguez Orellana, Comisionado Electoral del Partido Independentista Puertorriqueño ( en adelante P.I.P.), exige confirmar el dictamen del Tribunal Superior, Sala de San Juan (Hon. Ángel G. Hermida, Juez) que autorizó el uso, a modo de insignia-pasador, de la imagen de la bandera puertorriqueña.

I

Nuestra Constitución garantiza el derecho a la libertad de expresión. El Art. II, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1, ed.1982, pág. 265, dispone que "[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios". Sin embargo,

este derecho no es absoluto. "Por supuesto, este valor superior no supone una irrestricción absoluta, de forma que no pueda subordinarse a otros intereses cuando la necesidad y conveniencia públic[a] lo requieran." *Velázquez Pagán v. A.M.A.*, 131 D.P.R. 568, 576 (1992). Véanse, además; *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 D.P.R. 229 (1988); *Sánchez Carambot v. Dir. Col. Univ. Humacao*, 113 D.P.R. 153 (1982); *Rodríguez v. Srio. de Instrucción*, 109 D.P.R. 251 (1979); *Aponte Martínez v. Lugo*, 100 D.P.R. 282, 290 (1971); *Mari Bras v. Casañas*, 96 D.P.R. 15, 21 (1968).

El amplio poder concedido por la Asamblea Legislativa a la Comisión Estatal de Elecciones (en adelante C.E.E.) para reglamentar los procesos eleccionarios[1] debe enmarcarse dentro de los parámetros de razonabilidad, sobre todo, de "tener mucho cuidado al establecer limitaciones al ejercicio del derecho a la libre expresión". *Velázquez Pagán v. A.M.A.*, supra, pág. 576. Véase *Pueblo v. Santos Vega*, 115 D.P.R. 818, 822 (1984).

Ese enfoque se impone debido a que las "leyes que en alguna forma limitan el derecho constitucional de la libertad de expresión, deben ser interpretadas restrictivamente a fin de que esa limitación no traspase el límite de lo absolutamente necesario". *Pueblo v. Burgos*, 75 D.P.R. 551, 570 (1953); *Mari Bras v. Casañas*, supra; *Rodríguez v. Srio. de Instrucción*, 109 D.P.R. 251, 256 (1979).

---

[1] En el ámbito eleccionario, el legislador creó el cargo de Presidente de la Comisión Estatal de Elecciones para implementar y dirigir " 'los procesos electorales dentro de un ambiente de absoluta pureza e imparcialidad ... Conjuntamente con dicho funcionario, la Comisión Estatal de Elecciones —integrada por Comisionados Electorales y sus alternos nombrados por el Gobernador a petición del organismo central de cada partido político— es 'el organismo responsable de estructurar e inspeccionar todos los procedimientos de *naturaleza electoral*', conforme la ley y sus reglamentos. (Bastardillas nuestras.) Entre sus labores figuran 'diseñar un plan integral dirigido a una mayor eficiencia, rapidez y resolución de todos los problemas, asuntos y procedimientos electorales'; atender, investigar y *resolver* originalmente asuntos de su competencia; y aprobar y adoptar las reglas y los reglamentos necesarios. En resumen, la Comisión tiene funciones administrativas, cuasi legislativas y cuasi judiciales. Arts. 1.012 y 1.013 (16 L.P.R.A. secs. 3012 y 3013)". *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 408 (1980).

Contestar cuál es el límite de lo absolutamente necesario no es fácil; requiere definir el tipo de foro en que se lleva a cabo la expresión y el escrutinio jurisprudencial aplicable. En *U.N.T.S. v. Srio. de Salud*, 133 D.P.R. 153 (1993), identificamos tres (3) tipos: el público tradicional, el público por designación, y los no públicos. El *público tradicional* cubre los lugares tradicionalmente utilizados para la "reunión pacífica y el debate público, tales como las calles, aceras y parques". *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983), citado en *Unión v. Soler Zapata, supra*. El *foro público por designación* es aquel que, no siendo público tradicional, el Estado lo ha abierto a la actividad expresiva. Una vez establecido, queda sujeto a las mismas limitaciones de reglamentación de la libre expresión que tendría en el foro público tradicional. Finalmente, el *no público* comprende aquellas propiedades no enmarcadas en ninguno de los anteriores.([2])

## II

En el caso de autos, el dictamen de la C.E.E., a través de su Presidente, es acerca del uso de los emblemas y símbolos que puedan ostentar en sus vestimentas los empleados de la C.E.E. que trabajan en las J.I.P. y las Comisiones Locales. Les prohibió usar "cualquier símbolo, bandera, logo, mensaje u otro aditamento superfluo e innecesario, alusivo a partidos, fórmulas o tendencias políticas mien-

---

([2]) En lo pertinente a este recurso, cabe destacar que el Tribunal Supremo federal en *Burson v. Freeman*, 504 U.S. 191 (1992), al declarar constitucional una ley de Tennessee que prohibía propaganda política en colegios electorales, y hasta un radio de cien (100) pies alrededor, señaló que la propiedad en cuestión se trataba de un *foro público*. Al evaluar la reglamentación aplicó un escrutinio estricto o acucioso, pues ésta limitaba la expresión en un foro público e incidía en el contenido de la expresión. Bajo este riguroso escrutinio, el Estado tiene que demostrar afirmativamente la existencia de un interés apremiante y la inexistencia de medios menos drásticos u onerosos a la expresión. *U.N.T.S. v. Srio. de Salud*, 133 D.P.R. 153 (1993).

tras se encuentren en el desempeño de sus funciones". *Certiorari*, pág. 2.

Su amplitud es evidente y, además, limita el contenido del derecho de expresión en un *foro público*; por ende, procede el escrutinio estricto. De una parte detectamos legítimo el interés apremiante de la C.E.E. en "evitar que los empleados que atienden al público comiencen esa relación de servicio ostentando una identificación partidista; *además de la tensión y desavenencias que este despliegue ha generado*". (Énfasis suplido.) *Certiorari*, pág. 4. También vemos, en el otro extremo, el interés de los independentistas a portar en sus personas un pasador con la imagen de la bandera puertorriqueña como modo de expresión. Y, ciertamente, su condición de funcionarios electorales no les priva de todo derecho a la libre expresión.[3]

En su origen histórico "[p]sicológicamente, parece casi instintiva la aparición de la *bandera* en los pueblos primitivos, como signo de agrupación en la lucha, de reconocimiento dentro de un bando y cual símbolo de las aspiraciones colectivas o materiales de un pueblo o tribu". (Énfasis en el original.) G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, 20ma ed., Buenos Aires, Ed. Heliasta, 1994, T. I, pág. 453. Al igual que otros símbolos —escudo e himno— la bandera puertorriqueña[4] no es "producto de inventiva legislativa ajena a los fenómenos psicológicos

---

[3] En materia de expresión simbólica está resuelto que el Estado puede reglamentarla si: (a) existe un interés gubernamental sustancial; (b) *no se suprime la libertad de expresión*, y (c) la restricción se limita a lo esencial. *Stromberg v. California*, 283 U.S. 359 (1931); *Cohen v. California*, 403 U.S. 15 (1971), y *Tinker v. Des Moines School Dist.*, 393 U.S. 503 (1969). Incluso la libertad de expresión ha sido reconocida en la quema de la bandera de Estados Unidos. *Texas v. Johnson*, 491 U.S. 397 (1989).

[4] Tomamos conocimiento judicial del uso libre que en sus respectivas campañas y anuncios los dos (2) partidos principales, P.N.P. y P.P.D., han dado a las banderas de Puerto Rico y Estados Unidos.

El debate de la Asamblea Constituyente sobre el Art. VI, Sec. 15, en el cual se le concedió a la Legislatura la facultad de determinar "todo lo concerniente a la Bandera, el Escudo y el Himno del Estado Libre Asociado", revela la clara intención de que cualquier cambio o modificación a estos símbolos no regirá hasta pasada una elección después de aprobada la ley al efecto. 3 Diario de Sesiones de la Convención Constituyente 2078–2092 y 2096–2109 (1952).

que nutren un pueblo. ... Por naturaleza propia, individual y colectivamente, el ser humano en el diario convivir tiende a identificarse con aquellas creencias y posiciones que satisfacen su ideario y espíritu; se comunica con sus congéneres y recibe de éstos mensajes e ideas, no sólo por palabras sino a través de símbolos". *Democratic Party v. Tribunal Electoral*, 107 D.P.R. 1, 29–30 (1978), opinión concurrente y disidente.

El dictamen de la C.E.E. incide y menoscaba innecesariamente la libertad de expresión. Carece de un objetivo gubernamental apremiante. A fin de cuentas, la bandera —como símbolo de nacionalidad y representación— *es de dominio público*. La tesis de la C.E.E. no nos persuade. "La dificultad del argumento estriba en que por propia definición, aquello que es de 'dominio público' no es susceptible de apropiación por ninguna persona o entidad en particular" (*Democratic Party v. Tribunal Electoral*, supra, pág. 42) y específicamente en el ámbito de los símbolos, es peligroso elaborar una teoría por su impacto restrictivo sobre la libertad.

Bajo este prisma, el remedio del ilustrado Tribunal Superior circunscrito al derecho a exhibir, como prenda personal, una insignia-pasador con la imagen de nuestra bandera nacional, no mayor de tres cuartos (3/4) de pulgada por siete octavos (7/8), es razonable y menos drástico que la prohibición absoluta. Los independentistas, al igual que

---

En virtud de la Ley Núm. 1 de 24 de julio de 1952 sólo se prohibió "el uso de la bandera del Estado Libre Asociado de Puerto Rico como emblema o insignia de partido político o de candidato en la papeleta electoral". Se delegó en el Secretario de Estado la promulgación de un Reglamento al efecto. Notamos que éste, en la Regla 33–30, expande la prohibición más allá del texto legal:

"Queda prohibido el uso de la bandera como emblema o insignia de partidos políticos o de candidatos que figuren en la papeleta electoral. *Queda prohibido asimismo usarla como emblema o insignia en relación con elecciones primarias, elecciones plebiscitárias, referéndum, o cualquier otro tipo de consulta que se haga al pueblo por medios electorales.* (Énfasis suplido.) 1 R. & R.P.R. sec. 33–30.

*Quaere* la validez del texto subrayado.

los otros funcionarios de los restantes partidos, tienen ese derecho de expresión.