JUAN MARI BRAS y OTROS, demandantes y apelantes, *v.* JUAN F. CASAÑAS, ETC., demandado y apelado.

*Números:* AP-66-44, AP-66-45 *Resueltos:* 10 de mayo de 1968

16

*Enrique González*, abogado de los apelantes; *J. B. Fernández Badillo, Procurador General*, e *Ida Cardona Hernández, Procuradora General Auxiliar*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Cinco días antes de la celebración de las elecciones generales de 1964, en 29 de octubre, la Junta Estatal de Elec-

ciones aprobó varias reglas(¹) para disponer la clausura de locales de propaganda política en la vecindad de los colegios electorales, prohibir actividad política en la vecindad de los colegios electorales y prohibir el uso de altoparlantes el día de las elecciones,(²) con el siguiente texto:

"1—Por la presente se prohibe el ejercicio de toda propaganda política, en un día de elecciones, dentro de un radio de cien (100) metros de cualquier local donde hubiere instalado un colegio electoral. . . .

2—Se entenderá que viola la prohibición anterior la existencia, dentro del radio indicado, de cualquier local abierto al público para fines de propaganda alusiva o relativa a las elecciones; cualquier persona con cartelones alusivos o relativos a las elecciones; cualquier persona que distribuya o cualquier vehículo desde el cual se distribuyan folletos, hojas sueltas o material de cualquier naturaleza, alusivo o relativo a las elecciones; *cualquier altoparlante para la proyección de mensajes alusivos o relativos a las elecciones;* o cualquier persona que se dirija a otra solicitando su voto a favor de un candidato o partido político o solicitando que se abstenga de votar. . . .

. . . . . . . .

---

(¹) La Sec. 12 de la Ley Electoral, 16 L.P.R.A. sec. 13, autoriza expresamente a la Junta Estatal de Elecciones a aprobar reglas y reglamentos para la inspección y dirección de las elecciones; la Sec. 97(a), 16 L.P.R.A. sec. 285, establece que la infracción de cualquier regla o reglamento legalmente adoptado se considerará delito menos grave, castigable con multa no menor de cien ni mayor de quinientos dólares, o prisión de no menos de uno ni más de seis meses, o con ambas penas.

(²) En una exposición de motivos que precede a las reglas se hace referencia a que "las elecciones se celebrarán con libertad e igualdad"; a que "cabe la posibilidad de que en la inmediata vecindad de locales donde radiquen colegios existan centros de propaganda política" lo que "puede ocasionar desórdenes y provocar discusiones que degeneren en alteraciones del orden público"; y al deber de la Junta de velar que "las elecciones se conduzcan en la forma más tranquila, libre, honesta y legal posible, y lograr, asimismo, por todos los medios a su alcance, que todos los electores tengan acceso a los colegios, sin estar expuestos a amenazas o provocaciones, o a propaganda que pudiese convertirse en coacción que impida el libre ejercicio de la prerrogativa electoral." Se dice finalmente que "el uso de altoparlantes en el día de las elecciones *puede* perturbar el ambiente de paz y tranquilidad en que deben efectuarse las mismas."

. . . . . . . .

3—*Se prohibe terminantemente el uso de altoparlantes el
día de las elecciones en cualquier parte de Puerto Rico.*
4—. . . . . . . .

Por la presente se autoriza a la Policía Estatal de Puerto
Rico a clausurar cualquier local que en un día de elecciones,
como aquí se define, se dedique a propaganda política, siempre
que estuviere situado dentro de un radio de cien (100) metros
de un local donde hubiese colegios electorales. Además, se auto-
riza a la Policía Estatal de Puerto Rico a tomar posesión de
cualquier vehículo, artefacto, material o aparato que se esté
usando o se haya usado para propaganda política dentro del
radio de cien (100) metros antes mencionado; *y se le autoriza
también a ocupar cualquier altoparlante que se use en Puerto
Rico el día de las elecciones;* y, además, a arrestar a cualquier
persona que viole las disposiciones de estas Reglas." (Énfasis
nuestro.)

Cuatro miembros del Movimiento Pro Independencia—
agrupación política no partidista que aboga por la indepen-
dencia de Puerto Rico y que predica la abstención electo-
ral[3]—fueron encausados por alegadamente infringir la
Regla 3a. relativa al uso de altoparlantes.[4] No prestaron

---

[3] En 26 de octubre de 1964, tres días antes de la adopción de las
Reglas por la Junta Estatal de Elecciones, el Secretario de Justicia emitió
una opinión a instancias del Superintendente de la Policía al efecto de
que no obstante las disposiciones de los Arts. 97 y 98 (b) de la Ley Elec-
toral, 16 L.P.R.A. secs. 284 y 291, el legislador "no pretendió prohibir la
libertad de palabra y la libre expresión en todas sus formas cuando se
utilizaran para inducir a alguien a no votar lo que resultaría incompa-
tible con la Carta Orgánica de 1917 que rigió hasta 1952, y con la Cons-
titución del Estado Libre Asociado." Añadió que "estando los ciudadanos
protegidos por mandato constitucional contra toda coacción en el ejercicio
de la prerrogativa electoral [cita] queda proscrita toda conducta que
pueda reputarse que envuelva en alguna forma una coacción, amenaza o
intimidación a un elector a los fines de impedir que ejercite su derecho al
voto." Op. Sec. Just. Núm. 40 de 1964, vol. XXXV, pág. 211.

[4] Las denuncias imputan a los peticionarios los siguientes actos:

a Juan Mari Bras y Juan Ramón Crespo, que hacían funcionar un
altoparlante que tenían instalado en un vehículo, a través del cual decían
"Despierta Boricua, Despierta Boricua, Despierta Boricua", y otras por

fianza y se les encarceló. Presentaron solicitudes de hábeas corpus en las que atacan la constitucionalidad de la Regla Tercera. Celebrada la vista correspondiente el tribunal a quo las declaró sin lugar. Para ello concluyó que la disposición impugnada constituía un ejercicio legítimo de la facultad de la Junta Estatal de Elecciones para garantizar el derecho al sufragio universal y que "la limitada restricción a los medios de propaganda" que pudieren ser utilizados no infringía el derecho a la libre expresión.

Se interpuso recurso de apelación. En esencia, los peticionarios apelantes impugnan la validez de la Regla Tercera (a) como inconstitucional de su faz por ser una restricción indebida e irrazonable de la libertad de expresión; (b) por constituir una prohibición demasiado amplia que no guarda relación razonable con el derecho al sufragio libre que la Junta pretendía proteger; y, (c) por su aplicación a los peticionarios en forma discriminatoria.

■■■ 1. Previamente precisa establecer que el uso de altoparlantes para la diseminación de ideas y conceptos está protegido por el derecho constitucional que garantiza la libre expresión. En efecto no es más que la emisión de la palabra mecánicamente ampliada. No sólo los adelantos tecnológicos demandan que el derecho protegido no se limite a las usuales y proverbiales formas de expresión, sino que las necesidades

---

el estilo, cuyo texto completo según estipulación sometida en la vista del recurso de hábeas corpus era "Despierta boricua, defiende lo tuyo, defiende tu patria, defiende tu hogar; defiende tus hijos, tu honra y tu idioma, defiende tu cielo, tu tierra y tu mar. Ya otras islas rompieron sus cadenas conquistando con valor su dignidad. Puerto Rico no es menos que otras tierras, conquistemos también nuestra libertad. Rescatemos de manos extranjeras el cautivo patrimonio nacional; no seamos más parias en Borinquen; basta ya, puertorriqueño, basta ya";

a Clemente Mattei Padilla, que hacía uso de un altoparlante por el que invitaba al pueblo a que no votara y que se uniera a la huelga electoral;

y a Félix Rivera Otero, que permitía que Clemente Mattei Padilla hiciera uso de un altoparlante que había instalado en un vehículo conducido por el acusado y se dirigiera al público exhortando a que no votara.

20

económicas así lo requieren con vista del control que se ejerce por un grupo limitado sobre otros medios de comunicación en masa y de que es éste un vehículo al alcance de quienes, por su costo, no pueden utilizar en forma efectiva la prensa, la radio y la televisión.([5]) Por otro lado el derecho a la libre expresión conlleva el de ser oído y el uso de medios de amplificación sólo asegura que el mensaje llegará a un número mayor de personas.([6]) Escuela de Administración Pública, *La Nueva Constitución de Puerto Rico*, pág. 211.

■ 2. El Informe de la Comisión de Carta de Derechos de la Asamblea Constituyente consagra en forma inequívoca la primacía de que goza la libertad de expresión en nuestra estructura constitucional al describir sus secciones 3 y 4 como que "cubren el ámbito general de la libertad de conciencia, de pensamiento, de expresión, y las actividades propias para ejercitar a plenitud dentro de la más dilatada libertad la totalidad de estos derechos."([7]) Conocidas consideraciones históricas sustentan la preeminencia de este derecho, raíz

([5]) Véase, la Ley Núm. 110 de 30 de junio de 1957, 16 L.P.R.A. secs. 601–609, sobre el fondo electoral para los partidos políticos y la reglamentación de contribuciones para fines electorales.

([6]) A pesar de los comentarios conflictivos a que dieron margen a raíz de su decisión, no se discute en la jurisdicción federal desde *Saia* v. *New York*, 334 U.S. 558 (1948) y *Kovacs* v. *Cooper*, 336 U.S. 77 (1949), la aplicación de la Enmienda Primera al uso de altoparlantes. Véanse, comentarios en 29 B.U.L. Rev. 282 (1949); 34 Cornell L.Q. 626 (1949); 17 Geo. Wash. L. Rev. 494 (1949); 62 Harv. L. Rev. 1228 (1949); 9 Md. L. Rev. 285 (1948); 10 Md. L. Rev. 355 (1949); 3 Miami L.Q. 51 (1948); 47 Mich. L. Rev. 111 y 1007 (1948); 14 Mo. L. Rev. 194 (1949); 28 Neb. L. Rev. 618 (1949); 24 Notre Dame Law. 420 (1949); 24 N.Y.U.L. Rev. 232 (1949); 3 Okla. L. Rev. 219 (1950); 28 Ore. L. Rev. 54 (1948); 3 Rutgers L. Rev. 250 (1949); 22 So. Cal. L. Rev. 416 (1949); 1 Syracuse L. Rev. 170 (1949); 20 Tenn. L. Rev. 689 (1949); 17 U. Cinc. L. Rev. 400 (1948); 18 U. Cinc. L. Rev. 222 (1949); 2 U. Fla. L. Rev. 103, 257 (1949); 97 U. Pa. L. Rev. 730 (1949); 58 Yale L.J. 335 (1949); 6 Wash. & Lee L. Rev. 74 (1949).

Véase además, Anotación, *Public regulation and prohibition of sound amplifiers or loudspeaker broadcasts in streets or other public places*, 10 A.L.R.2d 627 (1950).

([7]) *Diario de Sesiones de la Convención Constituyente de Puerto Rico* (Equity Publishing Corp., 1961), vol. 4, pág. 2564.

indiscutible del sistema democrático de gobierno. Emerson, Haber y Dorsen, *Development of Freedom of Expression in the United States* en Political and Civil Rights in the United States, vol. I, págs. 29–71 (1967). Por supuesto este valor superior no supone una irrestricción absoluta, de forma que no pueda subordinarse a otros intereses cuando la necesidad y conveniencia públicas lo requieran. Es precisamente esta área la que nos corresponde deslindar en cada caso específico. ([8])

Característica distintiva de la Regla Tercera que consideramos es la naturaleza absoluta de la prohibición: "Se prohibe *terminantemente* el uso de altoparlantes el día de las elecciones *en cualquier parte de Puerto Rico.*" (Énfasis nuestro.) Contrasta en forma notable con la reglamentación germana sobre el ejercicio de propaganda política que se limita a un radio de cien metros de cualquier local en donde hubiere instalado un colegio electoral y que hace mención expresa a la transmisión mediante altoparlantes de mensajes alusivos o relativos a las elecciones. Preténdese fundamentar esta restricción en la mera posibilidad de que el uso de estos aparatos mecánicos perturben el ambiente de paz y tranquilidad en que deben celebrarse las elecciones.

A poco que se examine la situación se comprenderá que en efecto se trata de una tentativa de silenciar la expresión, no por la selección del método que se utiliza para la diseminación, sino por el mensaje que se intenta diseminar. Dista mucho de constituir una protección contra las "agresiones auditivas"; es en efecto una limitación al ejercicio de la libertad de palabra, que presupone el descubrimiento y propagación de las ideas. En el caso específico no puede concebirse un medio más efectivo para convertir en fútil el

---

([8]) Para una discusión de la misión de los tribunales en este particular, véanse, Richardson, *Freedom of Expression and the Function of Courts,* 65 Harv. L. Rev. 1 (1951) y Emerson, *Toward a General Theory of the First Amendment,* 72 Yale L.J. 877 (1963).

derecho de los peticionarios a la comunicación política, pues su prédica de abstención electoral cobra verdadera relevancia en el día de las elecciones. Es precisamente consustancial con el derecho de libre expresión conceder la oportunidad a los criterios de minoría de ser expuestos en *forma efectiva.*

■ Ante una situación parecida, el Tribunal Supremo federal llegó en *Mills* v. *Alabama,* 384 U.S. 214 (1966) a idéntico resultado. La cuestión planteada se reducía a determinar si constituía delito la publicación, el día de las elecciones, de un editorial apremiando a los electores para que en relación con cierta proposición votasen en determinada forma, frente a un estatuto que prohibía hacer campaña electoral o solicitar votar en favor o en contra de cualquier candidato o proposición durante el día de las elecciones. Expresó el Juez Asociado Señor Black: (a las páginas 218–219)

"No empece las diversas interpretaciones sobre la Enmienda Primera, prácticamente la opinión es unánime al efecto de que su propósito principal es proteger la libre discusión sobre los asuntos de gobierno. Por supuesto esto incluye la discusión sobre candidaturas, estructuras y formas de gobierno, la forma en que se conduce o debe conducirse la gestión gubernamental, y todo lo relacionado con los procesos políticos . . . . La prensa constituye, y se intentó que constituyera, un poderoso antídoto para los excesos de poder de oficiales públicos y como un medio constitucional seleccionado para mantener responsables al pueblo a los funcionarios escogidos por el pueblo. La supresión del derecho de la prensa a encomiar o criticar los funcionarios públicos y a clamar y solicitar cambios . . . amordaza uno de los instrumentos que los Autores de la Constitución sabia y deliberadamente escogieron para mejorar nuestra sociedad y conservarla libre. Al establecer penalidades por la publicación de editoriales como el presente se silencia la prensa en el momento que puede ser más efectiva. Es difícil concebir una restricción más obvia y flagrante de la garantía constitucional de libertad de prensa."

Cf. *Cantwell* v. *Connecticut,* 310 U.S. 296 (1940); *Hague* v. *Committee for Industrial Organization,* 307 U.S. 496

(1939); y *Lovell* v. *Griffin*, 303 U.S. 444 (1938). Véanse además, *Wollam* v. *City of Palm Springs*, 379 P.2d 481 (Cal. 1963) y nota en 49 Iowa L. Rev. 567 (1964); *Mathes* v. *Collyer*, 223 N.Y.S.2d 280 (1961); *Cardon* v. *Cromarty*, 221 N.Y.S.2d 924 (1961).

 Los esfuerzos que se hacen para presentar la limitación en el uso de altoparlantes como una restricción razonable se estrellan ante el carácter absoluto de la prohibición.[9] Como dijimos, fundamentalmente se intenta limitar la expresión de ideas ya que la regla impugnada no hace referencia a lugar o volumen de las transmisiones, y la que contiene respecto a tiempo—el día de las elecciones—lejos de sostener su razonabilidad destaca aún más su improcedencia. No compartimos el criterio adelantado de que el uso de altoparlantes es una actividad que inherentemente tiene elementos de coacción e interferencia con el libre ejercicio del sufragio. Ciertamente en el fondo de esta posición lo que se prevee es *que el mensaje que se transmite* pueda ser inflamatorio o que intervenga con la emisión del voto,[10] y por ello se recurre a la prohibición de toda manifestación. Dudoso servicio se le presta al derecho al sufragio libre que se pretende proteger si para ello se restringe la libertad de expresión; el resultado de aquél sería intrascendente sin la garantía de éste. Perdería todo significado; írritas serían sus consecuencias.

 Advertimos finalmente que nada de lo expuesto significa que no pueda reglamentarse el uso de altoparlantes

[9] Ya en *Pueblo* v. *Burgos*, 75 D.P.R. 551, 570 (1953), habíamos dicho que las leyes que en alguna forma limitan el derecho constitucional de la libertad de expresión deben "ser interpretadas restrictivamente a fin de que esa limitación no traspase el límite de lo absolutamente necesario."

[10] Para enfrentarse a estas eventualidades la legislación positiva contiene disposiciones suficientes. Véanse, entre otros, los delitos contra la paz pública contenidos en los Arts. 358 a 365, 368 a 371 del Código Penal, 33 L.P.R.A. secs. 1431 a 1442; la Ley de Ruidos Innecesarios, Núm. 71 de 26 de abril de 1940, 33 L.P.R.A. secs. 1443 y ss.; los Arts. 169, 177 y 188 del Código Penal, 33 L.P.R.A. secs. 560, 568 y 579.

en cuanto a tiempo, lugar y volumen, (11) no sólo para fines electorales sino para cualquier otro fin lícito. Sólo resolvemos que la prohibición absoluta contenida en la Regla Tercera conflige con la Sec. 4 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico y es inconstitucional de su propia faz. Por tanto, los peticionarios no pueden ser encausados por su violación.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 3 de mayo de 1966, y se devolverá el caso a dicho tribunal con instrucciones de que declare con lugar la petición de hábeas corpus y se ordene la cancelación de las fianzas prestadas por los peticionarios para permanecer en libertad mientras se sustanciaban los procedimientos.*

---

(11) En su alegato los apelantes aceptan que es procedente la reglamentación en cuanto a tiempo, lugar y volumen.