# 97 DTA 105

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN**

LEOPOLDO HERNANDEZ ESTRELLA
Apelante-Recurrentes

v.

JUNTA DE APELACIONES DEL SISTEMA DE
ADMINISTRACION DE PERSONAL
Demandados

Núm. KLRA-96-00132

San Juan, Puerto Rico, a 30 de abril de 1997

Panel integrado por su presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los recurrentes nos solicitan la revisión de una determinación de la Junta de Apelaciones del Sistema de Educación Pública (JASEP) que confirmó la decisión del Departamento de Educación de amonestarlos por escrito, con copia a sus expedientes de personal, por haber estado ausentes de sus labores como maestros para participar en un piquete el 5 de abril de 1996.

JASEP emitió y notificó su decisión el pasado 5 de junio de 1996. La solicitud de revisión fue presentada ante este Tribunal el 19 de julio de 1996. Con fecha de 13 de noviembre de 1996 emitimos Resolución en la que ordenamos al Departamento de Educación nos presentara su posición en torno al recurso de epígrafe. El Procurador General presentó Escrito en Cumplimiento de Orden el 10 de enero de 1997.

Un examen cuidadoso de los hechos no controvertidos, las posiciones de ambas partes y del derecho vigente nos mueven a **EXPEDIR** el auto solicitado y **REVOCAR** la decisión administrativa recurrida.

### I

Leopoldo Hernández Estrella, Carmen Vázquez De Jesús e Ileana Parés Rivera (en adelante, los recurrentes) son maestros de la Escuela Ana Roque del Distrito Escolar de Humacao. El 5 de abril de 1996 los recurrentes no asistieron a trabajar a su escuela, pues fueron a participar en un piquete frente a la Escuela Petra Mercado, del mismo Distrito Escolar. En la manifestación participaron padres, estudiantes y maestros con el propósito de repudiar la manera en que la directora María Santana Gutiérrez administra la escuela. La protesta fue realizada de forma pacífica, en la calle, frente a la escuela y terminó en Hato Rey frente al Departamento de Educación.

El 7 de abril de 1996, el Secretario de Educación notificó a los recurrentes una amonestación escrita, copia de la cual pasó a formar parte de los expedientes de personal de los maestros recurrentes:

*"La conducta observada por usted es altamente repudiable y constituye causa suficiente para su destitución como empleado del Departamento de Educación. No obstante lo anterior, en esta ocasión le expresamos nuestro más enérgico repudio a su conducta y le notificamos esta carta de*

*amonestación, la cual formará parte de su expediente de personal que obra en la Secretaría de Recursos Humanos del Departamento de Educación.*

*Le advierto que de continuar incurriendo en actos de esta naturaleza, me veré en la obligación de tomar medidas más severas en su contra."*

La comunicación del Secretario advertía a los maestros de su derecho a apelar ante JASEP. Los maestros presentaron apelación ante la Junta el 26 de abril de 1996. En ésta los maestros solicitaron al organismo apelativo que dejara sin efecto la amonestación escrita puesto que dicha acción *"limita y coacciona a los empleados de dicha agencia" en el ejercicio de su libertad de expresión y asociación".* Las partes sometieron sus posiciones por escrito y el Oficial Examinador sometió su informe y recomendación el 24 de mayo de 1996. La Junta emitió Resolución el 5 de junio de 1996 en la que acogió el informe del Oficial Examinador y confirmó la decisión del Secretario. Los apelantes presentaron Moción de Reconsideración el 21 de junio de 1996, pero la misma fue declarada No Ha Lugar el 3 de julio de 1996. Ante nos, los maestros recurrentes no cuestionan el descuento salarial del día que participaron en el piquete, pero sí impugnan la amonestación escrita pues entienden que constituye una represalia por haber ejercido su libertad de expresión. Los argumentos del Departamento para sostener la corrección de las sanciones impuestas son esencialmente que la ausencia de estos tres maestros afectó el funcionamiento de la escuela Ana Roque y que éstos no tienen derecho a participar en huelgas.

## II

En Puerto Rico, las libertades de expresión y asociación están consagradas en la Constitución, Artículo II, Sección 4. [1] La jurisprudencia ha establecido que la libertad de expresión goza de preeminencia en nuestro ordenamiento jurídico y que cubre el ámbito general de la libertad de conciencia, de pensamiento, de expresión y las actividades propias para ejercitar a plenitud la totalidad de estos derechos dentro de la más dilatada libertad, *Mari Bras v. Casañas,* 96 D.P.R. 15, 20 (1968).

Por ser vitales para la existencia misma de la democracia, los derechos a la libre expresión y asociación merecen la más celosa protección de parte de los tribunales, *Aponte Martínez v. Lugo,* 100 D.P.R. 282, 286 (1971); *P.R.T.C. v. Unión,* **92 J.T.S. 93.**

Los empleados públicos no renuncian al ejercicio de su derecho a la libre expresión por haber aceptado trabajar en el Gobierno, *Vázquez v. A.M.A.,* **92 J.T.S. 122,** 9924; *Pickering v. Board of Education,* 391 US 563, 568 (1968). Los maestros del sistema de instrucción pública no son la excepción:

*"First Amendment rights, applied in light of the special characteristics of school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines School District,* 393 US 503, 506 (1969).

El Tribunal Supremo de Puerto Rico ha hecho igual determinación a estos efectos, *Rodríguez v. Secretario,* 109 D.P.R. 251, 257 (1979); *Sánchez Carambot v. Director de Colegio Universitario,* 113 D.P.R. 153, 159 (1982). Sin embargo, no todas las expresiones de los empleados públicos gozan de la misma protección. *"...Existen dos categorías de expresiones de empleados públicos. La primera es aquella que el empleado hace sobre un asunto de preocupación pública. La segunda es aquella que sólo trata sobre asuntos de interés personal. La protección constitucional de la Primera Enmienda comprende la primera, pero no la segunda. Para hacer una determinación de cuáles son las expresiones protegidas lo crucial entonces es decidir cuáles son los asuntos de preocupación pública," Velázquez v. A.M.A., supra.* Sobre este particular, véase, además, *Pickering v. Board of Education, supra,* página 572; *Connick v. Myers,* 461 US 138, 154 (1983).

De otra parte, el derecho a la huelga proviene de la Sección 18 del Artículo II de la Constitución del E.L.A., la cual debe ser leída en conjunto con la sección que le precede:

*"Sección 17. Los trabajadores de empresas, negocios y patronos privados y de agencias o*

*instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar.*

*Sección 18. A fin de asegurar el derecho a organizarse y a negociar colectivamente, los trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán, en sus relaciones directas con sus propios patronos el derecho a la huelga, a establecer piquetes y llevar a cabo otras actividades concertadas legales..."*

Del propio texto constitucional surge que con excepción de los trabajadores de ciertas agencias o instrumentalidades públicas que funcionan como empresas o negocios privados, los empleados del Gobierno de Puerto Rico no tienen garantizado el derecho de negociar colectivamente o a utilizar los instrumentos de huelga o piquetes, para lograr mejores condiciones de trabajo.

En el caso de autos, el piquete al cual asistieron los recurrentes no era de naturaleza huelgaria, ni para exigir aumento salarial, beneficios marginales o mejores condiciones de trabajo. La manifestación llevada a cabo frente a la escuela Petra Mercado no fue sino una expresión por parte de padres, maestros y estudiantes de su repudio y desaprobación al modo en que la directora de dicho plantel ejerce, según ellos, la administración pública. A todas luces, es un ejercicio de la libertad de expresión que cumple precisamente el propósito para el cual fue garantizada tanto en la Constitución federal como en la de Puerto Rico:

*"...the First Amendment's primary aim is the full protection of speech upon issues of public concern, as well as the practical realities involved in the administration of a government office."* Connick v. Myers, supra, página 154.

La manifestación pacífica de estos empleados públicos fue una protesta sobre un asunto de preocupación pública, por lo cual, conforme a los criterios de *Velázquez v. A.M.A., supra*, está protegida por la libertad de expresión y asociación. No obstante, queda por realizar la segunda etapa del análisis: llegar a un balance entre los intereses del maestro, como ciudadano, en hacer expresiones sobre asuntos de interés público y el interés del Estado como patrono en promover la eficiencia de los servicios que presta a través de sus empleados, *Pickering v. Board of Education, supra.*

Dado que en este caso los maestros estuvieron ausentes el 5 de abril de 1996, día del piquete, ese día algunos estudiantes de la escuela Ana Roque que eran alumnos de los recurrentes no tomaron las clases de las materias que éstos enseñan. Ciertamente, la ausencia de los recurrentes afectó en mayor o menor medida la enseñanza ese día en la escuela Ana Roque, por lo que está plenamente justificado el descuento de ese día en su salario regular, como de ordinario hace el Departamento con cualquier otra ausencia de un maestro por razones personales no justificadas.

Pero a diferencia de cualquier otra ausencia por razones personales no justificadas, el Secretario impuso una sanción adicional, de consecuencias más duraderas y perjudiciales, al amonestarlos por escrito con copia a los expedientes de personal que obran en la Secretaría del Departamento. Resulta impermisible que el empleado reciba una sanción adicional por haber hecho uso de sus derechos constitucionales.

Ante la Junta de Apelaciones del Sistema de Educación, el Departamento justificó su doble acción disciplinaria al arguir que ambas medidas estaban dispuestas en comunicaciones internas de anteriores Secretarios de Educación. ▪ Sin embargo, es necesario señalar que las sanciones dispuestas en tales comunicaciones internas del Departamento están previstas para casos en que los maestros asistieran durante horas laborables a huelgas y piquetes de la misma naturaleza. Como ya hemos discutido, esa no fue la situación en el caso de epígrafe, por lo que es improcedente utilizar tales disposiciones como apoyo a la imposición de la amonestación escrita.

Si el piquete del 5 de abril de 1996 hubiese tenido el propósito de hacer reclamos de índole laboral, estaríamos ante el uso de un mecanismo que los recurrentes no tienen garantizado por la Constitución y ante tal situación, tendríamos que analizar si procedería aplicar las sanciones dispuestas en los

citados memorandos o comunicaciones. Pero esa no es la situación ante nos, los hechos fueron otros: los maestros recurrentes asistieron a una manifestación pacífica junto a padres, otros maestros y estudiantes y ejercieron su derecho constitucionalmente protegido a la asociación y a expresar libremente su opinión sobre asuntos de interés público. Como ejercer ese derecho conllevó estar ausente de sus labores, los recurrentes aceptan la procedencia del descuento salarial que les fuera efectuado. Pero la imposición de una segunda medida disciplinaria --improcedente en este caso por haber sido diseñada para otra situación-- cuyas repercusiones dañarán permanentemente el récord de estos empleados públicos constituye un fuerte disuasivo para el ejercicio de la libertad de expresión. También implicaría que los recurrentes sufran un doble castigo por la misma falta (la ausencia por causa personal no justificada). La Sección 11 del Artículo II de la Constitución del E.L.A. dispone que *"nadie será puesto en riesgo de ser castigado dos veces por el mismo delito."* En el ámbito estatutario, el Artículo 63 del Código Penal, 33 L.P.R.A. Sección 3321, establece similar protección. Aunque dicha protección opera de ordinario en el derecho penal, cumple con los dos requisitos establecidos por la jurisprudencia para la aplicación de normas penales en el cauce disciplinario administrativo:

*"Hay que analizar los fundamentos y los propósitos de cada norma penal que se quiera aplicar al proceso administrativo. Hay también que analizar el propósito y las consecuencias de ese proceso administrativo al cual se pueden aplicar las normas de origen penal. Sólo si los fines o fundamentos de la norma penal cumplen el mismo propósito en el proceso administrativo, si su aplicación no crea un descalabro en el orden administrativo, procede su aplicación. Pagán Hernández v. U.P.R., 107 D.P.R. 720, 743 (1978)."*

La determinación a la que hoy llegamos sirve el propósito de limitar la sanción a aquella que sea justa y suficiente y no descalabra el orden administrativo, pues no crea dilación o complejidad alguna en el trámite disciplinario del Departamento.

En vista de que la amonestación por escrito con copia al expediente de personal no procede en este caso, por ser ésta una sanción prevista para la participación de maestros en piquetes de naturaleza huelgaria; de la aplicabilidad a este caso de la norma contra la imposición de doble penalidad por una misma falta; y sobre todo, del celo con el cual los tribunales debemos preservar la libertad de expresión, corresponde **REVOCAR** la Resolución de la Junta y dejar **SIN EFECTO** la amonestación escrita a los recurrentes.

### III

Por los fundamentos anteriormente expuestos, este Tribunal **EXPIDE** el recurso de revisión y **REVOCA** la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 105

1. *"No se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios."*

2. Véase páginas 72 a 75 del Apéndice de la solicitud de Revisión.