OPINION DISIDENTE DE LA
JUEZ COTTO VIVES
2002 DTA 40
San Juan, Puerto Rico, a 29 de junio de 2001
Disiento de la sentencia que emite este Tribunal en el caso ante nos, porque si bien es cierto que estamos tratando derechos constitucionales fundamentales como lo son la libertad de prensa y de expresión, así como el derecho a la intimidad, la evaluación de las circunstancias de este caso no debe llevamos a la interprelación tradicional del conflicto entre estos derechos, sino, por el contrario, alejamos de la equivocada conclusión de que el interés de la libertad de prensa y expresión supera el de la protección de la intimidad del menor que es afectado por estas circunstancias y que necesita de la protección del Estado cuando los llamados a protegerlo equivocan la mía a seguir. Hasta mencionar que los derechos constitucionales no son absolutos y de hecho, así lo dispuso el Tribunal Supremo en el caso de Rodríguez v. Srio. de Instrucción, 109 D.P.R. 251 (1979), cuando, refiriéndose al derecho de libertad de expresión, señaló lo siguiente:
"A pesar de la honda estima social de que disfrutan tales postulados ello no los hace acreedores de irrestricción absoluta, sino que por el contrario han de subordinarse a otros intereses en circunstancias en que la conveniencia y necesidad pública así lo requieran. Mari Bras v. Casañas, 96 D.P.R. 15 (1968)." Enfasis Suplido.
También resulta de gran tangencia a este caso la determinación del Tribunal Supremo en el caso de Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 20, (1986), en el cual se dispuso:
"El derecho constitucional a la intimidad ha sido objeto de amplia discusión en nuestra jurisprudencia. En P.R. Tel. Co. v. Martínez, 114 D.P.R. 328 (1983), reconocimos la supremacía de este derecho como uno de los derechos de la personalidad, de índole innata y privada, inherente al hombre. Ya en García Santiago v. Acosla, 104 D.P.R. 321, 324 (1975), habíamos afirmado que:
...jija intromisión en la vida privado sólo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad públicas o el derecho a la vida y a la felicidad del ser humano afectado. No menos exige la Constitución del Estado Libre Asociado al declarar que la dignidad del ser humano es inviolable, y al condenar el discrimen por motivo de nacimiento, origen o condición social." (Enfasis suplido).
En los hechos que dieron lugar al caso que hoy atendemos, ambas partes, equivocadamente, decidieron utilizar el medio televisivo pasa ventilarlo. En el primer caso, so color de interés público y, en el otro, en interés de protección del menor. A nuestro juicio, ambos infringieron el derecho de intimidad del menor, por lo cual, *877 ambos deben ser apercibidos de no continuar violando el derecho a la intimidad del menor que hoy debemos proteger. Esto es así porque el Sr. Santarrosa, en su programa televisivo, difundió información que cuestionaba la filiación por vía paterna, de un hijo del Sr. Marcano. Ante su interés por desmentir esa información, el Sr. Marcano utilizó otro canal televisivo para defender a su hijo, su familia y su honra. Por ello, aunque con intenciones diametralmente opuestas ambos, a nuestro juicio, infringieron la intimidad del menor, por lo cual, con carácter inmediato, deben ser apercibidos para que cesen de ventilar públicamente este asunto.
Pasemos a analizar los derechos constitucionales en conflicto.
Los derechos constitucionales en cuestión lo son el de libre expresión, prensa ya la intimidad. Aún cuando todos estos derechos gozan de enorme valoración en el derecho constitucional puertorriqueño con todo, éstos pueden entrar en conflicto y por las particularidades del caso, según el contexto podrían prevalecer uno sobre el otro. Ejemplo del ejercicio de este delicado balance lo mostró el Tribunal Supremo en el caso de Pérez Vda. de Muñiz v. Criado, 151 D.P.R._(2000), 2000 J.T.S. 105, al señalar que el derecho a la intimidad goza de un altísimo sitial en nuestra escala de valores y, en muchas situaciones, el derecho a la protección de la vida privada o familiar debe prevalecer sobre dichas libertades.
Consecuentemente ha sido resuelto que estos derechos constitucionales, aunque de suma importancia, no son de carácter absoluto. Pero en el escrutinio de sus limitaciones debemos sopesar la necesidad pública versus la protección a la intimidad de los cuidadanos. De hecho, así quedó demostrado en el caso de Rodríguez v. Srio. de Instrucción, supra.
Volviendo al caso de Arroyo v. Rattan Specialties, supra, y, en protección al derecho a la intimidad, el Tribunal Supremo expresó lo siguiente:

"Los derechos a la dignidad, integridad personal e intimidad son derechos constitucionales fundamentales que gozan de la más alta jerarquía y constituyen una crucial dimensión en los derechos humanos. Su protección es necesaria para que se pueda lograr una adecuada paz social o colectiva. Una persona respetada en su intimidad y dignidad -que no es otra cosa que el amplio y, en ocasiones, complejo mundo interior individual- sentirá y vivirá la paz, el respeto y la consideración merecida por todo ser humano en una sociedad. Es de esperarse, pues, que esos mismos sentimientos, vitales para una ordenada, racional y pacífica convivencia social, sean proyectados de manera efectiva a nuestro orden social."

De manera que la función del tribunal debe ser siempre la de sopesar los intereses en conflicto para decidir qué derecho constitucional debe prevalecer en las circunstancias traídas ante nos. Con esto en mente, consideremos lo siguiente:

“Para la protección del derecho a la libre expresión, debemos cuestionarnos si existe algún interés legítimo en la expresión, si hay un fin público que debamos proteger o, inclusive, el valor intrínseco de lo que se publicó y que se interesa detener la continuidad de su ventilación pública. Al apreciar este hecho se hace débil el sostener este caso como de censura previa, porque la información a detenerse ya fue expuesta. Por lo tanto, no hay tal censura previa. Lo que pretende el demandante con el recurso de injunction es detener la continuidad de su publicación o de su argumentación y ventilación pública, por el daño irreparable que ello le ocasiona al menor. ”

Entendemos que, el estado en el ejercicio de su deber de parens patriae debe proteger al menor y su derecho a la intimidad y, en última instancia, su estabilidad emocional y mental. Por ello, somos del criterio que el Tribunal debe prohibirle a ambas partes -al Sr. Marcano y al Sr. Santarrosa- continuar exponiendo la filiación de este menor en la palestra pública. De manera ilustrativa debemos recordar que la Regla 62.2 de las Procedimiento Civil de 1979, dispuso que la vista y procedimiento de los casos de filiación, entre otros, se celebra en privado. No hay justificación en este caso para abandonar o apartamos de esa regla y, por el *878 contrario, debemos reafirmamos en la sabiduría de la misma.
Tal es la política pública del estado en defensa de los menores que, inclusive, en los casos de conducta delictiva de un menor -casos de faltas de menores- las vistas o juicios se celebran con la debida protección y garantías para el menor, ante el convencimiento del Estado de proteger a los mismos. A esos efectos el Art. 8 de la Ley de Menores, 34 L.P.R.A. see. 2208, reza como sigue:

"Todas las vistas sobre los méritos se efectuarán en sala y de acuerdo con las disposiciones de. las Reglas de Procedimiento para Asuntos de Menores.

El público no tendrá acceso a las salas en que se ventilen los casos de menores a menos que los padres, encargados o el representante legal del menor demanden que el asunto se ventile públicamente y en todo caso bajo las reglas que provea el Juez. El Juez podrá consentir a la admisión de personas que demuestren tener interés legítimo en los asuntos que se ventilan, previo consentimiento del menor y su representación legal.

Todos los otros actos o procedimientos podrán ser efectuados y ventilados por el Juez, en su despacho o en cualquier otro lugar sin necesidad de la asistencia del secretario u otros funcionarios del Tribunal.

Ims vistas en los casos de menores bajo este Capítulo se celebrarán sin jurado.-Julio 9, 1986, Núm. 88, p. 284, art. 8, ef. 180 días después de Julio 9, 1986." Enfasis suplido.
Por su parte el Art. 37, sec. 2237, en lo pertinente, dispone:

"(a) Naturaleza de los procedimiento.-Los procedimientos y las órdenes o resoluciones del Juez bajo este Capítulo no se considerarán de naturaleza criminal ni se considerará al menor un criminal convicto en virtud de dicha orden o resolución.

El historial del menor ante el Tribunal no constituirá impedimento para cualquier solicitud y obtención de empleo, puesto o cargo en el servicio público.

(d) Confidencialidad del expedienle.-Los expedientes en los casos de menores se mantendrán en archivos separados de los de adultos y no estarán sujetos a inspección por el público, excepto que estarán accesibles a inspección por la representación legal del menor previa identificación y en el lugar designado para ello. Tanto los expedientes en poder de la Policía como aquéllos en poder del Procurador están sujetos a la misma confidencialidad. No se proveerán copias de documentos legales o sociales para ser sacadas fuera del Tribunal.

(e) Publicación de nombre y fotografía; mecanismos e identificación.-No.se publicará el nombre de un . menor ni su fotografía y no se tomarán sus huellas digitales, ni se incluirá en una rueda de detenidos a menos que, a discreción del Tribunal, sea necesario recurrir a cualquiera de estos medios para identificarlo. En estos casos, el Juez expedirá la autorización por escrito. Se considerará desacato al Tribunal cualquier persona o entidad que publique nombres o fotografías de menores.

Todo expediente de un menor en poder de la Policía deberá ser destruido al éste cumplir dieciocho (18) años de edad, al igual que cualquier expediente que obre en manos del fiscal de distrito, cuando el menor fuese juzgado o fuese iniciado indebidamente en su contra un proceso como adulto."

Como hemos visto, el Estado siempre ha protegido y salvaguardado con mucho celo la confidencialidad de los asuntos de menores, aun cuando se hayan involucrado en actividades delictivas. Ni siquiera en protección de la sociedad -cuando éstos han dado muerte a otro ser humano- ha descubierto su identidad, salvo aquellos casos en que la propia ley permite la renuncia del tribunal de menores y son juzgados como adultos. Si ello es así cuando un menor no ha respetado la vida ajena, cuánto más nos vemos obligados a protegerlos cuando son de *879 tan tierna edad y su única maldad es ser hijo de una figura pública que, por la naturaleza de sus funciones, tiene que pagar lo que tanta gente comúnmente denomina "el precio de la fama". Por esta razón debemos distinguir el interés del menor del de los adultos envueltos en el presente caso.
En vista de lo anterior, considero que lo resuelto en la sentencia que hoy emite este Tribunal no concuerda con el manifiesto interés del estado al aprobar extensa legislación en protección de los niños. Como sabemos, dicha legislación es de alto interés en materia de política pública a fin de garantizar la protección de los mismos.
En E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975), el Tribunal Supremo encontró justificado un injunction para proteger a un funcionario público que sufrió un piquete laboral en su lugar de residencia. En su decisión se expresó que el derecho a la tranquilidad y al descanso de este funcionario público sobrepasaba el interés de la expresión pública que interesaba exponer la Hermandad de Empleados. A la luz de ese análisis tendríamos que preguntamos si el interés del programa del Sr. Santarrosa es superior al mejor bienestar del menor indefenso. Definitivamente no. El sitial de que goza el derecho a la intimidad es tal que en el caso de E. LA. v. Hermandad de Empleados, supra, el Tribunal Supremo expresó que en muchas situaciones el derecho a la vida privada o familiar debe prevalecer sobre otras libertades incluyendo la libertad de expresión. Al igual que en el caso de referencia, consideramos que las circunstancias de este caso rebasan los extensos límites de la libertad de expresión.
También es de aplicación a los hechos de este caso, lo expresado por el Tribunal Supremo al determinar que a la persona agraviada se le coarta su derecho a la tranquilidad y al descanso. Se le acosa, se le inquieta y se altera el sosiego de su hogar. Los costos psíquicos a los miembros de la familia y, lo que es peor, al menor, exceden el interés de "rating", so color de noticia, que pueda tener el Sr. Santarrosa. Según el análisis que formuló el Tribunal Supremo en el caso arriba citado, debemos preguntamos si la discusión pública de la filiación de un menor (que es persona privada) es una función lícita o si vamos a tolerar que se le ocasione daño psíquico irreparable al menor. En su análisis del caso de E.L.A. v. Hermandad de Empleados, supra, el Tribunal Suprémo concluyó con esta expresión: "Uno de los valores más preciados de la vida civilizada, la tranquilidad del hogar, es un valor muy superior a los que puede tener el de la lucha sindical contemporánea". ¿Cómo es posible que en este caso no podamos concluir lo mismo hablando no de lucha sindical, sino del honor de una familia y la protección de un menor del cual, de hecho, ya queda cuestionado su origen?
No hemos encontrado ningún caso resuelto que atienda el derecho de libertad de expresión frente al derecho de intimidad de un menor. La jurisprudencia con que contamos ha analizado el derecho de libertad de expresión frente al derecho a la intimidad de personas adultas que tienen disponible otra acción en equidad como lo es el resarcimiento mediante acciones de daños y peijuicios. Aún así, vemos cómo en el caso de E.L.A. v. Hermandad de Empleados, supra, se protegió el derecho a la intimidad del funcionario público envuelto. Cuánto más no tendríamos que hacerlo en protección del interés y bienestar de un menor expuesto a un daño irreparable que lo marque emocional y públicamente para el resto de su vida. Definitivamente no hay compensación económica que logre resarcir verdaderamente un daño de esta naturaleza.
Por todo lo anterior es que concluimos que el remedio legal que aseguran está disponible para compensar el daño causado al menor -o el daño futuro de permitirse la continuación de la discusión de su filiación de manera pública- no repara el daño sufrido ni puede detener a este Tribunal de prevenir que el daño continúe. Por tanto, para evitar en un daño irreparable al menor, el recurso de injunction está disponible para detener el mismo.
En Arroyo v. Rattan Specialties, Inc., supra, el Tribunal Supremo expresó lo siguiente:
"También hemos reconocido el derecho a ser indemnizado por los perjuicios que se causen cuando un ciudadano privado interfiere con uno de estos derechos. Colón v. Romero Barceló, supra. Esta acción de daños no impide que la persona afectada salvaguarde y proteja su derecho a la intimidad y a la integridad personal en el trabajo mediante el uso del recurso de injunction. P.R. Tel. Co. v. Martínez, Sucn. de Victoria v. Iglesia *880 Pentecostal, supra." 
Como hemos visto, el no conceder el remedio solicitado en protección del menor, tendrá la ineludible consecuencia de permitir perpetuar un daño irreparable a un menor indefenso. Es nuestro criterio que, bajo las circunstancias de este caso y analizado desde la perspectiva que hemos expuesto, no resultan amenazados los derechos constitucionales de libertad de expresión y de prensa, así como tampoco resulta vulnerado el derecho a la intimidad del menor.
Concluimos que el recurso de injunction es el eficaz y: apropiado en el asunto que hoy nos toca resolver y que el Tribunal debe concluir que la protección a la intimidad del menor es superior a los otros derechos constitucionales en conflicto y que, en las circunstancias de este caso, deben ceder en beneficio del menor.
Por estas poderosas razones, disiento.
NYDIA M. COTTO VIVES Jueza de Apelaciones
ESCOLIOS OPINION DISIDENTE DE LA JUEZ COTTO VIVES - 2002 DTA 40
1. E.L.A. v. Hermandad de Empleados, supra.
2. P.R. Tel. Co. v. Martínez, 114 D.P.R. 328 (1983); Sucn. de Victoria v. Iglesia Pentecostal, 102 D.P.R. 20 (1974).