EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Centro de Periodismo Investigativo, Inc.; Luis J. Valentín Ortiz; Noel Algarín Martínez<br><br>Peticionarios<br><br>v.<br><br>Jennifer González Colón, en su capacidad oficial como Gobernadora del Estado Libre Asociado de Puerto Rico; Marieli Padró Raldiris, en su capacidad oficial como Secretaria de Prensa de la Gobernadora del Estado Libre Asociado de Puerto Rico; Oficina de la Gobernadora del Estado Libre Asociado de Puerto Rico; Departamento de Estado; Estado Libre Asociado de Puerto Rico<br><br>Recurridos | 2026 TSPR 40<br><br>218 DPR ___ |

Número del Caso: CC-2026-0247

Fecha: 17 de abril de 2026

Representantes legales de la parte peticionaria:

     Lcdo. Luis José Torres Asencio
     Lcdo. Steven P. Lausell Recurt
     Lcda. Judith W. Berkan Barnett

Materia: Resolución del Tribunal con Voto particular disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Centro de Periodismo Investigativo, Inc.; Luis J. Valentín Ortiz; Noel Algarín Martínez<br><br>Peticionarios<br><br>v.<br><br>Jennifer González Colón, en su capacidad oficial como Gobernadora del Estado Libre Asociado de Puerto Rico; Marieli Padró Raldiris, en su capacidad oficial como Secretaria de Prensa de la Gobernadora del Estado Libre Asociado de Puerto Rico; Oficina de la Gobernadora del Estado Libre Asociado de Puerto Rico; Departamento de Estado; Estado Libre Asociado de Puerto Rico<br><br>Recurridos | CC-2026-0247 | *Certiorari* |

RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de abril de 2026.

Examinada la *Moción en solicitud de orden provisional en auxilio de jurisdicción* y la *Solicitud de certiorari*, presentadas por la parte peticionaria, se provee no ha lugar a ambas.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió un Voto Particular Disidente. El Juez Asociado señor Estrella Martínez emite la siguiente expresión particular, a la cual se une la Jueza Presidenta Oronoz Rodríguez:

"Considero que este es un caso idóneo para precisar, conforme a derecho, el balance de

intereses y los contornos necesarios de una controversia que refleja una pugna entre el ejercicio de derechos constitucionales a la libertad de prensa y el interés del Estado en una intención declarada de promover un ambiente de seguridad y orden en las conferencias de prensa que convoca. Por un lado, el dictamen del foro primario carece de la especificidad necesaria para establecer un estado de derecho claro que evite controversias ulteriores similares entre las partes u otros periodistas. Por el otro, la *Sentencia* recurrida del foro intermedio no va a la médula de la controversia ni profundiza en los fundamentos aplicables a la tarea de evaluar la validez del mecanismo establecido por el Poder Ejecutivo como precondición para que la Prensa logre acceso a las conferencias de prensa. Así, el saldo de las determinaciones recurridas es que no se provee un remedio adecuado, completo y oportuno en la búsqueda del ecuánime equilibrio que debemos procurar quienes custodiamos la balanza de la justicia.

Por esta razón, hubiese expedido el recurso de *certiorari* y celebrado una vista oral para auscultar el mejor balance posible entre los derechos constitucionales y los intereses en controversia. Además, en lo inmediato, hubiese declarado ha lugar la *Moción en solicitud de orden provisional en auxilio de jurisdicción* que presentó la parte peticionaria y, así, hubiese paralizado, en cuanto a esta, los efectos de la medida adoptada por el Poder Ejecutivo hasta que se resolviera el caso en los méritos."

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Centro de Periodismo Investigativo, Inc. y otros<br><br>    Peticionarios<br><br>        v.<br><br>Jenniffer González Colón y otros<br><br>    Recurridos | CC-2026-0247 |

Voto particular disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 17 de abril de 2026.

En esta ocasión, ante una solicitud que nos hace el Centro de Periodismo Investigativo, Inc., veníamos llamados y llamadas a determinar si es, o no, válido el que se requiera una certificación de prensa, expedida por el Departamento de Estado de Puerto Rico (en adelante, "Departamento de Estado"), como condición para poder asistir a las conferencias de prensa que se celebran en La Fortaleza, sede de gobierno en nuestro País; o si, por el contrario, tal limitación constituye una violación al derecho constitucional a la libertad de prensa.[1] Hoy, ante el silencio ensordecedor de una mayoría de mis compañeros y

---

[1] El presente caso tiene su génesis en una *Demanda* sobre sentencia declaratoria, e *injunction* preliminar y permanente, presentada el pasado 29 de diciembre de 2025, ante el Tribunal de Primera Instancia, por el Centro de Periodismo Investigativo y los periodistas Sres. Luis J. Valentín y Noel Algarín Martínez en contra de la Gobernadora del Estado Libre Asociado de Puerto Rico, Hon. Jenniffer González Colón; la Sra. Marieli Padró Raldiris, en su capacidad oficial como Secretaria de Prensa de la Gobernadora; la Oficina de la Gobernadora; el Departamento de Estado; y el Estado Libre Asociado de Puerto Rico. Ello, luego de que a los referidos periodistas se le negara la entrada a cierta conferencia de prensa en La Fortaleza.

compañeras de estrado (cuyo efecto es validar tan desacertado proceder), no nos queda más que, desde la disidencia, abordar el referido requerimiento por parte de la Primera Ejecutiva del País; uno que, a todas luces, lesiona, -- gravemente --, un derecho constitucional de superior jerarquía consagrado tanto en la Constitución de los Estados Unidos de América, *infra*, como en la Constitución del Estado Libre Asociado de Puerto Rico, *infra*, entiéndase la libertad de prensa. Derecho constitucional que esta última juro defender contra todo enemigo interior o exterior. Nos explicamos.

## I.

Como ya mencionamos, tanto la Constitución de los Estados Unidos de América, como la Constitución del Estado Libre Asociado de Puerto Rico, consagran la libertad de prensa como un derecho fundamental. Enmda. I, Const. EE. UU., LPRA, Tomo 1 y Art. II, Sec. 4, Const. ELA. PR, LPRA, Tomo 1. En específico, las precitadas disposiciones constitucionales establecen que no se aprobará ley alguna que tenga como efecto el restringir o coartar la libertad de palabra o de prensa. *Íd.* De ahí que, cuando se asomen a nuestras puertas asuntos o controversias que incidan sobre los referidos derechos constitucionales, sea labor de este Tribunal el resguardar celosamente las protecciones que éstos brindan.[2] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1019 (2020); *U.P.R. v. Laborde Torres y otros I*, 180

---

[2] Recordemos que "la libertad de prensa es un derecho fundamental de todos los puertorriqueños y puertorriqueñas, y proteger dicho derecho goza del más alto interés público". *Izquierdo II v. Cruz*, 213 DPR 607, 635 (2024) (Op. de conformidad del Juez Asociado señor Colón Pérez).

DPR 253, 286 (2010); *Muñiz v. Admor. Deporte Hípico*, 156 DPR 18, 23 (2002).

Y es que, como hemos expresado en el pasado, las libertades de palabra y de prensa, en la medida en que facultan el desarrollo del individuo y estimulan el libre intercambio y la diversidad de ideas, constituyen piedra angular de nuestro sistema democrático de gobierno. *OCS v. Point Guard Ins.*, supra; *U.P.R. v. Laborde Torres y otros I*, supra; *Muñiz v. Admor. Deporte Hípico*, supra; *Velázquez Pagán v. A.M.A.*, 131 DPR 568, 576 (1992). **En esa dirección, hemos sentenciado que el derecho de acceso, el derecho a recopilar y el derecho a publicar constituyen herramientas claves para el libre flujo de información, intercambio de ideas y el ejercicio eficaz del derecho de la libertad de prensa.** Véase, por ejemplo, *Disidente Univ. de P.R. v. Depto. de Estado*, 145 DPR 689 (1998); *Villanueva v. Hernández Class*, 128 DPR 618 (1991); *Soto v. Srio. de Justicia*, 112 DPR 477 (1982).

Establecido lo anterior, es también nuestro deber reconocer aquí que el derecho a la libertad de prensa, como todo derecho constitucional, puede, en situaciones en extremo extraordinarias, limitarse y "subordinarse a otros intereses cuando la necesidad y conveniencia pública lo requieran". *Mari Bras v. Casañas*, 96 DPR 15, 21 (1968). Empero, y según ha sido previamente sentenciado por este Tribunal, las limitaciones adoptadas deben ser interpretadas de forma restrictiva, de modo tal que se asegure que éstas no abarquen más de lo necesario. *OCS v. Point Guard Ins.*, supra; *U.P.R. v. Laborde Torres y*

*otros I*, *supra*, pág. 287; *Muñiz v. Admor. Deporte Hípico*, *supra*, pág. 24. Adelantamos que ello no fue lo que sucedió aquí.

II.

De otra parte, y por considerarlo en extremo pertinente para la correcta disposición de los asuntos ante nuestra consideración, conviene también recordar aquí que nuestra Carta Magna concede a la Asamblea Legislativa la facultad de "crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones". Art. III, Sec. 16, Const. ELA. PR, *supra*. En esa dirección, el legislador y la legisladora tienen la prerrogativa de delegar a las agencias administrativas adscritas al Poder Ejecutivo, -- ya sea mediante su ley orgánica o a través de una ley especial --, ciertas facultades, entre las cuales se encuentra, claro está, la de aprobar reglas y reglamentos. *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales*, 213 DPR 685, 700 (2024); *FCPR v. ELA et al.*, 211 DPR 521, 535 (2023). Véase, también, D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3.ª ed., Bogotá, Ed. Forum, 2013, pág. 121 y *Sánchez et al. v. Depto. Vivienda et al.*, 184 DPR 95, 120-123 (2011).

**Sobre el particular, este Tribunal ha establecido los siguientes principios que sirven como guía al pasar juicio sobre la validez de las actuaciones de una agencia: "(1) determinar si la ley autoriza la actuación administrativa; (2) si se delegó el poder de reglamentación; (3) si la reglamentación está dentro de los poderes delegados; (4) si al**

**aprobarse la reglamentación se cumplió con las normas procesales; y (5) si la reglamentación es arbitraria o caprichosa.** *Caribe Comms., Inc. v. PRTCo.*, 157 DPR 203, 211-212 (2002). **Así pues, si luego de evaluar la actuación del organismo legislativo, se determina que éste actuó por encima de los poderes que le fueron delegados por la Asamblea Legislativa, dicha actuación se considerará como una *ultra vires* y, por consiguiente, nula.** *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales*, *supra*, pág. 701; *FCPR v. ELA et al.*, *supra*, pág. 536; *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363, 371 (2008).

En lo aquí pertinente, y de conformidad con lo dispuesto en el Art. 2.24 de la Ley Núm. 22 de 7 de enero de 2000, mejor conocida como la *Ley de Vehículos y Tránsito de Puerto Rico*, 9 LPRA sec. 5025 (en adelante, "Ley Núm. 22-2000"), la Asamblea Legislativa delegó al Secretario del Departamento de Transportación y Obras Públicas la facultad de expedir un "rótulo removible" a un miembro *bona fide* de la prensa general activa, -- debidamente acreditado como tal ante el Departamento de Estado --, a los fines de identificar el vehículo de motor que utilice. A su vez, el Art. 1.86 de la precitada ley dispone que se considerará "prensa general activa" a "aquellas personas debidamente acreditadas por el Departamento de Estado que se dedican a la búsqueda de información para los medios noticiosos y para quienes esta ocupación constituye su principal medio de vida". Art. 1.86 de la Ley Núm. 22-2000, *supra*, sec. 5001, inciso 84.

Fue, precisamente, en virtud de la referida disposición legal que el Departamento de Estado promulgó el *Reglamento para establecer la expedición, renovación, cancelación y el uso de las certificaciones de prensa*, Reglamento Núm. 6336 de 8 de agosto de 2001 (en adelante, "Reglamento Núm. 6336"). Mediante éste, se dispuso el procedimiento a seguir para acreditar a las personas integrantes de la prensa general activa, de modo tal que éstos y éstas puedan obtener, por parte del Departamento de Transportación y Obras Públicas, el "rótulo especial" al que hemos hecho referencia. Art. I del Reglamento Núm. 6336, *supra*. Cabe señalar que este último busca facilitar el estacionamiento del vehículo del o de la periodista mientras éste o ésta se encuentre desempeñando gestiones periodísticas oficiales. Art. 2.24 de la Ley Núm. 22-2000, *supra*, Sec. 5025, inciso (d). <u>Y, en nada, se refería a constituir un mecanismo para poder determinar quién cubre, o no, las conferencias de prensa que se realizan en La Fortaleza</u>.

Es, precisamente, a la luz de la normativa antes expuesta que procedemos, desde la disidencia, a disponer de los asuntos ante nuestra consideración.

III.

Como mencionamos anteriormente, en el presente caso, el Centro de Periodismo Investigativo, Inc. sostiene que no es válido, ni constitucional, el que se requiera una certificación de prensa, expedida por el Departamento de Estado, como condición para poder asistir a las conferencias de prensa que se celebran en La Fortaleza. A nuestro juicio, les asiste la

razón al Centro de Periodismo Investigativo, Inc. Dos, a grandes rasgos, son las razones que nos llevan a concluir lo anterior.

En primer lugar, -- y considerando que el único motivo para el cual, mediante ley, se creó el procedimiento de solicitud y expedición de la certificación en cuestión fue para permitir que la prensa general activa obtenga cierto rótulo para fines de lograr un permiso especial de estacionamiento, de manera que pudiesen desempeñar sus labores más eficientemente; y no como mecanismo para regular quién cubre, o no, una conferencia de prensa que se celebre en la Fortaleza --, somos del criterio de que el Departamento de Estado no tenía, ni tiene, la autoridad para emitir certificaciones de prensa para un uso ulterior. Lo anterior, pues, de así hacerlo, y de conformidad con la normativa antes expuesta, la referida agencia gubernamental estaría actuando más allá de las facultades que le fueron delegadas por la Asamblea Legislativa, lo cual redundaría en una actuación, sin lugar a dudas, nula.

Como se puede apreciar, lo antes dicho, por sí solo, sería suficiente para disponer de la controversia ante nuestra consideración. Sin embargo, y, en segundo lugar, dado lo delicado de los asuntos traídos ante nuestra consideración, no podemos dejar de mencionar que, desde nuestro punto de vista, las actuaciones de la Primera Ejecutiva del País, aquí en controversia, no sobrevivirían el análisis del escrutinio estricto que se emplea cuando actuaciones del Estado inciden sobre los derechos constitucionales que tienen las personas que

aquí habitan. Y es que, para así hacerlo, se debe establecer que una regulación que afecta un derecho fundamental "responde a un interés apremiante, y que es necesaria, por no existir un medio menos oneroso para promover y alcanzar dicho interés". *Disidente Univ. de P.R. v. Depto. de Estado*, *supra*, pág. 696; *San Miguel Lorenzana v. E.L.A.*, 134 DPR 405, 425 (1993); *Calo Morales v. Cartagena Calo*, 129 DPR 102, 132-133 (1991).

**Un sistema que, al final del día, -- muy acomodaticiamente --, deja en manos de La Fortaleza el poder determinar quién sí, y quién no, accede la sede de Gobierno, a cubrir las conferencias de prensa de la Primera Ejecutiva del País y su equipo de trabajo, a todas luces, no constituye la alternativa menos onerosa a la que se refiere el escrutinio estricto que aplica al acercarnos a evaluar este tipo de regulación que incide sobre un derecho constitucional de superior jerarquía, como lo es la libertad de prensa. Lo que hoy aquí se plantea no es un asunto nuevo, y como cuestión de hecho, históricamente, aquellos y aquellas que previamente habían habitado el Palacio de Santa Catalina han empleado alternativas menos onerosas para atender los problemas de control y seguridad, si alguno, que pudiesen traer consigo situaciones como las que hoy nos ocupan. Entre ellas, que el Juez que suscribe recuerde, nunca había estado el cerrarle las puertas a la transparencia. No vemos por qué hoy tiene que ser distinto.**

IV.

En fin, por tratarse aquí de una actuación por parte de la Primera Ejecutiva del País que, a todas luces, incide sobre

el derecho a la libertad de prensa, -- un derecho, según adelantamos, de la más alta jerarquía constitucional --, estábamos llamados y llamadas a llevar a cabo un análisis detenido y, sobre todo, desapasionado de los asuntos traídos ante nuestra consideración, a los fines de resguardar el mismo.

Hoy, una mayoría de mis compañeros y compañeras de estrado falló en esa responsabilidad. Por ello, disentimos. En ese sentido, hubiésemos declarado ha lugar la moción en auxilio de jurisdicción y la petición de *certiorari* presentadas en la causa de epígrafe, con el único fin de revocar la errada determinación del Tribunal de Apelaciones.


                              Ángel Colón Pérez
                              Juez Asociado